## CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY *v.* HOLMBERG.

No. 1. Argued October 10, 1928. Reargued October 23, 1930.—Decided December 1, 1930.

*Mr. Wymer Dressler,* with whom *Messrs. Robert D. Neely, Richard L. Kennedy,* and *R. N. Van Doren* were on the brief, for plaintiff in error.

*Messrs. O. S. Spillman,* Attorney General of Nebraska, and *Hugh LaMaster,* Assistant Attorney General, for defendant in error, on the original argument. *Mr. Hugh LaMaster,* Assistant Attorney General, with whom *Mr. C. A. Sorensen,* Attorney General, was on the supplemental brief, for defendant in error on reargument.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on writ of error, allowed under § 237, Jud. Code, before the amendment of Jan. 31, 1928, to review a judgment of the Supreme Court of Nebraska, which sustained an order of the State Railway Commission. 115 Neb. 727. The order directed plaintiff in error to install, at an estimated cost of $1,153 to it and of $453 to the landowner, an underground cattle pass under its tracks, so as to connect the farm lands of defendant in error lying on either side of and adjacent to plaintiff's right of way. The Commission acted under authority purporting to be given by § 5527 Comp. Stat. Neb. 1922, as amended (Laws of Neb., 1923, c. 167), printed in the

margin.[1] The plaintiff assails the statute, as applied in this instance, as depriving it of property without due process of law, and as impairing the obligation of contract in violation of the federal Constitution.

Defendant's farm comprises a quarter section of land, divided approximately in half by plaintiff's track, which crosses from the northwest corner to the southeast. For fifteen or more years plaintiff has maintained a farm crossing, at grade, now equipped with gates, which connects the parts of the farm near its northwest corner. The state court assumed that the crossing was established before 1921 and while the statute provided only that where the same person owns land on both sides of a railroad, the latter " shall, when required so to do, make and keep in good repair one causeway or other adequate means of crossing the same." Amendments (Laws of Neb., 1921, c. 261, and that of 1923) added the provisions authorizing the Commission to entertain complaint by the landowner that a crossing " is not adequate or is unsafe and dangerous to the life and property of

---

[1] Section 5527. Whenever any person owns land on both sides of the right-of-way of any railroad, such railroad shall provide and keep in repair at least one adequate means for such land owner to cross the right-of-way. Any interested land owner with land on both sides of the right-of-way of any railroad may file written complaint with the state railway commission against any such railroad that the crossing is not adequate or is unsafe and dangerous to the life and property of those who use the same, and the commission thereupon shall make such investigation and hold such hearing as may be necessary, and shall issue such orders as it shall deem necessary, proper and adequate. If circumstances warrant the commission may require overhead, under ground or grade crossings and require wing fences at underground crossings or may require existing crossings to be relocated so as to be safe to those who use them, but where such special crossing involves an expenditure of more than seven hundred ($700.00) dollars the land owner shall bear one-half the expenses in excess of seven hundred ($700.00) dollars.

those who use·" it, and to require an overhead or underground crossing " if circumstances warrant."

The proceeding now under review was begun in 1924 by defendant's petition to the Commission, setting up, as the sole basis for the order sought, that the surface crossing was inadequate. The only ground of inadequacy alleged or sought to be proved was that the crossing could not be reached without passing through defendant's cultivated fields on both sides of the track, to avoid which, defendant was compelled, in transferring his cattle from water supply to pasture and return, to drive them back and forth a distance of three-fourths of a mile on a public highway which crosses plaintiff's line at grade. The petition stated that an underground pass could easily be established at another point on plaintiff's line, where there was a depression on each side, so as to connect defendant's pasture with the southwest part of his farm, and with a cattle runway extending to his yards and water supply.

The Commission, after a hearing, found the facts as alleged, and others showing that defendant's farm could be more conveniently operated if the proposed pass were established, concluded that the present crossing was "inadequate and impracticable," and granted the order asked. The Commission did not find, nor was there evidence before it tending to show, that the crossing was not adequate for the passing and repassing of such persons and cattle as would normally go from one part of defendant's farm to the other in conducting usual farm operations.

The state court, in passing on the order, had before it only the evidence given and proceedings had before the Commission. Saying that the record did not adequately present the point, it assumed, upon the basis of concessions stated to be in briefs before it, that plaintiff ac-

quired its right of way by condemnation prior to 1921. It pointed out that at that time the statute required plaintiff to maintain a causeway or "other adequate means of crossing" between the two parts of the farm. It said that compensation for the land condemned must be taken to have been assessed in view of the provisions of the statute, and that plaintiff took its right of way subject to the statutory obligation to construct and maintain the "adequate" farm crossing defined by the statute. It mooted, without deciding, the question whether the present crossing was adequate within the meaning of the statute as originally enacted, suggested that there might be "a further definition" of adequacy "by the state in proper exercise of its police power," and supported the order of the Commission on the ground that the state could, in the exercise of its police power, "eliminate the perils of grade crossings."

There is no occasion for us to consider how far, if at all, the state's power to remove the dangers of public grade crossings, see *Erie Railroad Co. v. Board of Public Utility Commissioners*, 254 U. S. 394, extends to private farm crossings when unsafe to the traveling public or individual users. The Nebraska statute has delegated to the State Railway Commission authority to order farm crossings underground because either inadequate or dangerous, if circumstances warrant. But there is nothing in this record to suggest that the order of the Commission was either asked or granted as a safety measure. The Commission did not find that the crossing was dangerous either to the public, the litigants, or their property. Neither did it find that this crossing was in anywise different from the usual farm crossing at grade. True, there was testimony that cattle passing over the crossing

needed to be attended and controlled to prevent injury to them by trains. But this was no more true of that crossing. than of surface farm crossings in general. The case is one of a single track branch line. The track is straight and it was conceded on argument before this Court that there were only four trains a day. While there are bare assertions in the testimony that the 'private crossing was dangerous, there was no evidence of any danger beyond that which would attend the use of any farm crossing. Neither the Commission nor the state court regarded the statute as condemning all such crossings, doubtless because the statute distinctly includes that type of crossing among those which it authorizes the Commission to require, its words being, "the Commission may require overhead, underground or grade crossings" as the circumstances may warrant. It is plain that the Commission proceeded upon the assumption that the statute authorized it to compel plaintiff to establish the underground pass for the convenience and benefit of defendant in the use of his own property, and that that alone was the ground and purpose of the order. The application thus given to the statute deprives plaintiff of property for the private use and benefit of defendant, and is a taking of property without due process of law, forbidden by the Fourteenth Amendment. *Missouri Pacific Ry. Co.* v. *Nebraska*, 164 U. S. 403; *Missouri Pacific Ry. Co.* v. *Nebraska*, 217 U. S. 196; *Great Northern Ry. Co.* v. *Minnesota*, 238 U. S. 340; *Great Northern Ry. Co.* v. *Cahill*, 253 U. S. 71.

The judgment below, which affirmed the Commission's order, is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*