La whence, J.
(dissenting). The indictment charges, as a first count, a violation of section 759 of the Penal Law, as follows: “ The defendant, Ford Motor Company, in the County of Albany, 1ST. Y., on or about November 15th, 1944, subjected Patrick Poleto, an employee of the Ford Motor Company, entitled to vote at the general election held on November 7th, 1944, to a reduction of wages, to wit, wages for two hours, because the said Patrick Poleto exercised the privilege of attending at said general election so held on November 7th, 1944.”
The second and third counts charge the same offense, committed upon the same date but against a different employee in each count. In the second count the name of the employee is Frank G. Miller. In the third count the name of the employee is Austin Boudreau.
There was a plea of not guilty to each count. A further .answer alleges that section 759 of the Penal Law is unconstitutional and void in that it violates the Constitution of the United States, particularly section 10 of article I, and section 1 of article XIV of the amendments thereto, and violates the Constitution of the State of New York, particularly sections 6 and 11 of article I.
*144 After the jury were sworn a motion was made to dismiss the indictment upon the grounds stated in the answer and under section 200 of the Election Law which, by reference, is incorporated in section 759 of the Penal Law. This was denied. At the close of the testimony for the People that motion to dismiss was renewed and again denied. The defendant offered no evidence and renewed the motion. This was denied.
Section 759 of the Penal Law reads as follows: “ A person or corporation who refuses to an employee entitled to vote at an election or town meeting, the privilege of attending thereat, as provided by the election law, or subjects such employee to a penalty or reduction of wages because of the exercise of such privilege, is guilty of a misdemeanor.”
Section 200 of the Election Law contains the provisions referred to and, so far as applicable here, reads as follows: “ Any person entitled to vote at an election shall on the day of election be entitled to absent himself from any service or employment in which he is then engaged or employed, for a period of two hours, while the. polls of the election are open * * *. If the voter shall notify his employer before the day of election of such intended absence, and if thereupon two successive hours for such absence shall be designated by the employer, and such absence shall be during such designated hours, or if the employer upon the day of such notice makes no designation, and such absence shall be during any two successive hours while the polls are open, no deduction shall be made from the usual salary or wages of such voter, and no other penalty shall be imposed upon him by his employer * * *.”
It is the contention of the defendant that these employees were paid for each and every hour that they worked and at the same wages per hour and that consequently there was no reduction in wages.
A general election was held in this State on November 7, 1944. Each of the three employees was a qualified voter and entitled to vote at such general election. Prior to election day each of them gave notice, in writing, to his employer, the defendant, of his intention to be absent for two hours on election day pursuant to provisions of section 200 of the Election Law, and each received a notice from the foreman of the defendant designating the two-hour' period for such absence. Each of the three employees attended the polls during the two-hour period and cast his vote. Each employee was ■paid in cash, which was enclosed in an individual envelope *145 marked with his name. In the case of one of the employees there was taken from the pay envelope a sum representing wages for the two-hour period taken off on election day. In the case of the other two employees the envelopes were rewritten and the cash put into the envelopes was for the actual time spent at work. No cash was put into the envelopes representing wages for the two hours allotted for voting on election day. The employees were paid by the hour.
It would seem that the various steps contemplated by the Election Law were taken until it came to the matter of paying the employees. The employees gave notice of their intention to be absent on election day; the Ford Motor Company designated the hours for absence of the voters in order not to disrupt the company’s activities. The payrolls were prepared for wages to be paid during the period of absence for voting. After instructions from company officials, a correction was made and the wages for such two hours were not included. This may well come within the statute forbidding a deduction or reduction of wages. The employees were paid in full for all the time they actually worked. The question remains: Is the law constitutional which required the Ford Motor Company to pay employees for two hours on election day during which time they performed no services?
The Ford Motor Company is a foreign corporation. It does business in this State by permission. It secured a certificate to do business in this State subsequent to the enactment of the laws in question. It is claimed by the plaintiff that in the Ford Motor Company’s contracts for the employment of labor it had knowledge of the existence of the statutes in question and entered into contracts for the employment of labor with such knowledge. That would be upon the assumption of the validity of the statutes. When the Ford Motor Company was granted permission to do business in this State, its rights were measured by the same standards as governed domestic corporations. It is not claimed that the employees suffered any penalty or were denied any privilege except that "they were not paid the same wages for the two-hour period as they were paid on other days or for other hours of the same day.
One of the fundamental rights of every citizen is the privilege of enjoying his property until it is taken from him by due process of law. (Ives v. South Buffalo Ry. Co., 201 N. Y. 271.)
Appellant cites the case of Adkins v. Children’s Hospital (261 U. S. 525) to sustain its contention that the present law is unconstitutional. In that case the question presented for *146 determination was an act which provided for fixing the minimum wages for women and children in the District of Columbia. The act was declared unconstitutional by a divided court. The reason given was that it was not within the limits of police powers. The law, as announced in that case, was re-examined in the subsequent case of West Coast Hotel Co. v. Parrish (300 U. S. 379). That was a case involving the validity of the Minimum Wage Law in the State of Washington. That law was declared to be constitutional and the Adkins case (supra) was overruled by a divided court. The reasoning was that economic conditions had changed and that it was valid as promoting, among other things, health and safety and insuring the virility of the race.
Chicago, St. P., M. & O. Ry. v. Holmberg (282 U. S. 162) was a case which involved the validity of a statute of Nebraska, which required the railway company to provide and keep in repair an adequate underground passage for the benefit of a person who owned land on each side of the railway. The right of way had been acquired by the railroad prior to 1921. The statute was enacted in 1924. The Supreme Court of Nebraska had sustained the validity of the act and the order of a commission, directing the railroad to provide an underground cattle pass at an estimated cost to the railroad of $1,153. The decision was reversed in the United States Supreme Court upon the ground that the construction of the underground passage was ordered for the sole benefit of the property owner and constituted taking property without due process.
The case of People v. C., M. S St. P. Ry. Co. (306 Ill. 486) is relied upon by the appellant to sustain the contention that the law now challenged is unconstitutional. For our purposes the statute in that case is in effect the same as the statute now before this court. Section 25 of that statute is as follows: “ Any person entitled to vote at a general or special election or at any election at which propositions are submitted to a popular vote in this State, shall, ‘on the day of such election, be entitled to absent himself from any services or employment in which he is then engaged or employed, for a period of two hours between the time of opening and closing the polls; and such voter shall not because of so absenting himself be liable to any penalty, nor shall any deduction be made on account of such absence from his usual salary or wages; Provided, however, that application for such leave of absence shall be made prior to the day of election. The *147 employer may specify the hours during which said employee may absent himself as aforesaid. Any person or corporation who shall refuse to an employee the privilege hereby conferred, or shall subject an employee to a penalty or deduction of wages because of the exercise of such privilege, or who shall directly or indirectly violate the provisions of this section, shall be deemed guilty of a misdemeanor and be fined in any sum not less than five dollars ($5) nor more than one hundred dollars ($100).”
Statements made in appellant’s brief, which are not contradicted, show that the employee made application to be absent on election day in order to vote. Permission was granted. The employee was absent for the prescribed period and voted. He asked pay for the two hours during which he was absent. This was refused. The railway company was tried and convicted. On appeal, the Supreme Court of Illinois held that the statute requiring the employer to pay for the-period of two hours of absence was in violation of the Constitution of the State of Illinois and the Constitution of the United States. The Attorney-General of the State of New York substantially concedes that the Illinois case and the case at bar cannot be distinguished. He doubts, however, that the decision there is a precedent in Illinois at present and submits that it is not a guide for decisions in this State. The decision announced in the Illinois case has been recognized by later decisions in that State. Zelney v. Murphy (387 Ill. 492) was a case which arose under the Workmen’s Compensation Act. The court referred to the decision in the case of People v. C., M. & St. P. Ry. Co. (306 Ill. 486) but held it did not apply to the Unemployment Compensation Act. *
In recent years, since the decision in the Illinois case first mentioned, many statutes in New York have been enacted under the police powers for the health, safety and welfare of workmen as well as for the benefit of the general public. These laws have sought to preserve and protect health, safety and morals and save industry from destruction. All these statutes have a relationship to and insure the objects for which they were enacted. The courts have gone far to sustain such legislation. Notable examples are the unemployment provisions of the Labor Law, the Minimum Wage Law, the Milk Control Act, and the Workmen’s Compensation Law.
It is said that criminal laws must be so construed that actions, otherwise lawful, shall not become criminal unless there is a clear intent to make them so. If the result of the *148 legislation is to deprive one person of his property without compensation, and give it to another, it is the duty of the court to declare such legislation invalid. Measured by these standards let us examine some of the laws which the courts have upheld under the police powers. An examination of the law relating to workmen’s compensation shows that all constitutional limitations upon the power of the Legislature to enact laws for the protection of the lives, health and safety of employees have been removed, except in certain cases which are not important here. (N. Y. Const., art. I, § 18.) Tinder this provision of the Constitution the case of Matter of Schmidt v. Wolf Contr. Co. (269 App. Div. 201) was decided by this court. The decision was affirmed in 295 N. Y. 748. That, was a compensation case.
Chamberlin, Inc., v. Andrews (271 N. Y. 1, affd. 299 U. S. 515, rehearing denied, 301 U. S. 714) was a case arising under the unemployment provisions of the Labor Law. The constitutionality of that law was at issue. It was held to be constitutional by a divided court. Contributions were required from employers for the protection of the unemployed. The fund so created is held by the State. The State retains control of it and it is disbursed for the benefit of a large class, upon the theory, wise or unwise, that the State owes a duty to such class of citizens and that the law is not based upon an arbitrary classification or made without any substantial basis.
People v. Nebbia (262 N". Y. 259, affd. 291 TJ. S. 502) was a case involving the constitutionality of the Agriculture and Markets Law relating to the sale of milk. The sale of milk is controlled by articles 21 and 22-A of that statute. A conviction was had for a violation of that law. The purpose of the statute, as declared by it, is to protect and safeguard the milk industry in the interest of the public and to insure an adequate supply of wholesome milk, thereby protecting the well-being of citizens and preserving the strength and vigor of the race. The statute was held not to be in violation of constitutional provisions as it bore a reasonable relationship to public health and preserved a vital industry from destruction. In all the cases to which my attention has been called legislation, under police powers has been upheld when there was some reasonable relationship to health, protection or safety. Funds contributed for that purpose are for the benefit of the public and not to enrich private individuals who give nothing in return. A reasonable limit must be placed upon the authority to enact laws under police powers, otherwise the Constitution becomes a dead letter. That limit has been announced in People v. G., M. é St. P. By. Co. (306 111. 486, supra), in a *149 case which counsel concedes cannot he distinguished from the case at bar. The Election Law insures every voter the right to vote and an opportunity to be absent from his labors for that purpose. To that extent the constitutionality of the statute is not challenged, nor indeed can it well be. The question of paying an employee for the privilege of voting is challenged. People v. C., M. & St. P. Ry. Co. (supra) was not appealed to the United States Supreme Court. Until such time as the United States Supreme Court announces an opposite view, it stands as the law expressed by the highest court of a sister State. It is thus a persuasive authority upon us.
So far as any case has been brought to my attention and so far as I have been able to discover, no court has decided that it is the right of any voter,' under all circumstances, to be paid for the privilege of voting. The statute here requires employers to pay their employees for two hours of time while exercising the right to vote, whether that is necessary or not and thus deprives them of their property without due process and denies them the equal protection of the law, in violation of both the Federal and State Constitutions.
The judgment should be reversed and the indictment dismissed.
Hill, P. J., Heffernan, Brewster and Foster, JJ., concur in Per Curiam opinion; Lawrence, J., dissents in an opinion.
Judgment of conviction affirmed. -