## Illinois Cent. R. Co. v. Commonwealth.

June 3, 1947.

Joe L. Price, Judge.

Doolan, Helm, Stites and Wood and Wheeler, Marshal & Shelbourne for appellant.

Eldon S. Dummit, Attorney General, and Emmet V. Mittlebeeler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Illinois Central Railroad Company, appellant, was convicted of the misdemeanor of deducting wages from its employee for time spent in voting, such wage deduction being an offense denounced by KRS 118.340. Following a judgment in favor of the Commonwealth, appellee, for a $100 fine for this offense, the appellant moved for this appeal.

Among others, appellant now makes the contention that the trial court committed reversible error in upholding, through the effect of its judgment, the constitutionality of that law upon which this conviction rests.

There is no dispute about the facts of this case. On November 7, 1944, election day, W. K. Wall was

under an employment contract to work for appellant at an hourly wage of $1.04. His home was within 4 blocks of his voting place. His route from home to working place passed within 2 blocks of that same voting place. His 8 hour working day extended from 8:00 a. m. to 4:40 p. m. with a 40 minute interval for lunch. His voting place was open from 6:00 a. m. to 4:00 p. m. He went to work at his usual hour of 8:00 a. m. on that day, and he continued to work until 2:40 p. m., following his usual 40 minute lunch period. He ceased work at 2:40 p. m. and used some part of the 2 hour remainder of his working day in voting at his usual voting place. He claimed for the controversial day 8 hours of wages, representing a 6 hour working period for his employer and a 2 hour voting period for his country. The railroad refused to pay for the 2 hour voting period. This indictment, conviction and judgment followed.

Sec. 148, Ky. Constitution, says, in substance, that the legislative authority shall provide by law that employers must allow employees, under reasonable regulations, at least 4 hours to vote on election days. This section does not say that the 4 hours shall be allowed with pay, but the Commonwealth contends that any correct interpretation of it must add the pay feature.

KRS 118.340, enacted under the enabling power of Sec. 148, Ky. Constitution, says, in substance, that an employee entitled to vote at an election shall have the right to absent himself on election day for 4 hours between opening and closing time of the polls, provided such employee has made prior application for this privilege and subject to the employer's right to fix the time of its exercise.

KRS 118.990 says that any employer, who deducts from the usual wages of an employee absenting himself under the provisions of this law, shall thereby become guilty of a misdemeanor and subject to a fine ranging from $50 to $500.

Appellant says that it had 4,849 employees in Kentucky on the day in question, that a full payment to all of them within the terms of this statute would have cost appellant at least $11,591.63, that for such an expenditure there would have been to appellant no value received.

Voting is the privilege of a free people. One of its primary purposes is to keep people free. There is no such thing as a popular election in some countries of the old world. Dictatorships will have none of them. This glorious country belongs to the farmers, to the working people, to the little people whose name is legion, to the middlesized people who are the salt of the earth, to those of the big people who would yet remain little people because their God-fearing hearts make them humble. No group of people in America has a greater stake in its government, in its rocks and rills, in its woods and templed hills, than ordinary working men. No group in America can be more interested in voting for a clean, righteous, free, statesmanlike government than that group known as workers. The woman with the sun bonnet and the checkered apron who trudges off of the mountain side in Leslie County and walks down the creek a mile to cast her vote—she is an American queen in calico, but her only pay for voting is the satisfaction of knowing that Columbia, by God's help and hers, shall continue as the gem of the mighty ocean. Let no man cease to thank his God as he looks in at the open door of his voting place, as he realizes that here his quantity, though cast in overalls, is exactly the same as the quantity of the President of the United States. There is a satisfaction and privilege in voting in a free country that cannot be measured in dollars and cents.

We have no fault whatever to find in any statutory provision securing to workers the right to absent themselves 4 hours on election days to cast their votes. Such a provision could not and would not antagonize any part of either the Kentucky or the United States Constitution. Both of these instruments practically raise their own voices and shout their approval of a statute of that character.

But a statutory provision which has the effect of requiring an employer to pay an employee for 4 hours of unemployed time, whether or not he votes, whether or not he has opportunity to vote before he starts to work, whether or not he spends just 10 minutes in voting —this could not, we think, be constitutional. It does not seem to be in keeping with the American tradition.

Ky. Constitution, Sec. 2, contains these words: ''Ab-

solute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

If we interpret the above constitutional provision correctly, it inhibits the legislative power of this state from arbitrarily passing a law taking property away from one person and giving it to another person without value received or without any contractual basis. And this inhibition still stands, regardless of the merit or glory or value or need of the person on the receiving end of the transaction. Hardly a more worthy objective could be designed than that of building a great hospital for crippled children of all creeds and colors, a marvelous, public enterprise, and yet the constitution would not sanction a law saddling the burden of such an undertaking upon the farmers of Kentucky to the exclusion of its butchers, bakers and candlestick makers. Such a law would constitute an exercise of arbitrary power over the property of that group of freemen known as farmers. Its arbitrariness would lie in its unfairness and in its preferment. The law will not countenance a public maintenance of a private enterprise. Neither should the law demand a private maintenance of a public enterprise. Voting is a public enterprise. But if its maintenance is required by the employer group rather than by the entire, broad, general public, then that amounts to a requirement of private maintenance of a public enterprise.

We also believe that the wage-payment-for-voting-time provisions of this statute are antagonistic to the United States Constitution, particularly that provision which says that no state shall deprive any person of his property without due process of law or deny to any person in its jurisdiction the equal protection of the law.

So far as we know, there has been only one case of this exact character decided by any court of last resort in the United States. The holding of that one case was that such a law as this one now under consideration, passed by legislative authority in the State of Illinois, could not meet constitutional standards and must accordingly fall in the face of the fundamental restrictions of organic law. See People v. Chicago, M. & St. Paul Ry. Co., 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610.

The Commonwealth makes the contention that our legislative authority had a right, under the exercise of its police power, to adopt the law in question, since its adoption was in the interest of the general welfare of the public. A state's police power is truly a thing of vitality and reality, and it is a power which is both broad and useful. In a general way it extends to all the great, public needs. However, we have said that the legislative authority may not, under the guise of promoting public interest, arbitrarily interfere with private business. City of Louisville v. Kuhn, 284 Ky. 684, 145 S. W. 2d 851. And it is always appropriate to remember that the police power is not without its limitations, since clearly it may not unreasonably invade and violate those private rights which are guaranteed under either federal or state constitution. 11 Am. Jur. 992.

Wherefore, the motion for an appeal is sustained and appellee's judgment, for the reasons herein indicated, is now reversed with directions for further proceedings consistent herewith.