STATE OF MISSOURI, Plaintiff, v. DAY-BRITE LIGHTING, Inc., a Corporation, Defendant, No. 41979—240 S. W. (2d) 886.

Court en banc, June 11, 1951.

Rehearing Denied, July 9, 1951.

300

*Louis J. Portner, Cobb, Blake, Armstrong, Teasdale & Roos, Thomas H. Cobbs* and *Henry C. M. Lamkin* for appellant.

*J. E. Taylor,* Attorney General, and *John R. Baty,* Assistant Attorney General, for respondent.

HOLLINGSWORTH, J.—This is an appeal from a conviction in the St. Louis Court of Criminal Correction by which defendant-appellant (hereinafter designated as defendant) was adjudged to pay a fine of one hundred dollars for violation of Section 11785, Mo. R. S. A. The case was tried on an agreed statement of facts. The two questions for determination are whether (a) the facts support the verdict and (b) whether that part of the section under which defendant was convicted is violative of the constitutional rights of defendant as guaranteed it under the Constitutions of the United States and the State of Missouri.

Section 11785, enacted in 1897 (Laws 1897 [Section 1] p. 108), reads: "Any person entitled to vote at any election in this state shall, on the day of such election, be entitled to absent himself from any services or employment in which he is then engaged or employed, for a period of four hours between the times of opening and closing the polls; and such voter shall not, because of so absenting himself, be liable to any penalty: Provided, however, that his employer may specify the hours during which such employee may absent himself as aforesaid. Any person or corporation who shall refuse to any employee the privilege hereby conferred, or shall discharge or threaten to discharge any employee for absenting himself from his work for the purpose of said election, or shall cause any employee to suffer any penalty or deduction of wages because of the exercise of such privilege, or who shall, directly or indirectly, violate the provisions of this section, shall be deemed guilty of a misdemeanor, * * *".

The information, as originally filed, charged defendant in count one with refusing to permit its employee (Fred C. Grotemeyer) to absent himself from his employment for a period of four hours

between the time of opening and closing of the polls on the general election day of November 5, 1946; ▮▮▮▮ in count two with penalizing him by deducting from his salary the amount of his earnings for the time he was absent from his work on that day. Defendant's conviction under count two is the basis of this appeal. For a history of the case prior to this appeal, see State v. Day-Brite Lighting, Inc., 220 S. W. 2d 782.

Defendant, a Missouri corporation, operated a manufacturing plant in the City of St. Louis and its products "moved in interstate commerce". Fred C. Grotemeyer was and for several years prior to November 5, 1946, had been in its employ. He was a member of Local No. 1, International Brotherhood of Electrical Workers, which had a contract with defendant covering wages, hours and other working conditions of its employees. A work week consisted of forty hours, divided into five eight hour days. Grotemeyer was paid on an hourly basis at the rate of $1.60 per hour for each hour worked. His work day began at 8:00 a. m. and closed at 4:30 p. m., with a lunch period of thirty minutes from 12:00 to 12:30 noon. He was to receive pay only for hours actually worked. The rules of defendant provided that no employee, except in cases of sickness or emergency, should be absent from work without permission.

On the day prior to the general election of November 5, 1946, Grotemeyer, who was qualified to vote in that election, asked permission to absent himself for a period of four hours between the beginning and end of his scheduled work day "to do campaigning, to vote and to get out the vote". This specific request was refused, but defendant on that day posted on its bulletin board a notice permitting all employees on the day shift (including Grotemeyer) to take time off to vote at 3:00 p. m., on November 5th. This was one and one-half hours earlier than Grotemeyer's work day normally would end, but it did permit him to absent himself from his employment for four consecutive hours between the opening and closing of the polls, which were 6:00 a. m. and 7:00 p. m. On November 5th, Grotemeyer absented himself from his employment at 3:00 p. m. and thereafter voted. He was paid by defendant only for those hours worked on November 5th, to-wit: six and one-half hours, or the time from 8:00 a. m. to 3:00 p. m., less the thirty minute lunch period.

One hundred fifty-eight of defendant's employees worked at an average hourly rate of $1.089 from 8:00 a. m. to 4:30 p. m.; fifty-eight employees worked at an average hourly rate of $1.03 from 7:00 a. m. to 3:30 p. m., and seven employees worked at an average hourly rate of $.8646 from 7:00 a. m. to 3:00 p. m. The total amount of wages paid all employees for not working, if all took four hours off from the scheduled work day to vote, would be $951.42, and four hours of production loss amounting to $7138.00 would have resulted. In April, 1949, there were 230,600 hourly-paid employees in the State of Mis-

souri engaged in manufacturing industries and 729,600 employees in non-manufacturing industries, and the average hourly earnings of these employees in manufacturing industries was $1.302.

■ Defendant's first contention is that under the agreed statement of facts no violation of Section 11785 was shown. Its argument runs in this wise: ''It is not charged defendant threatened to discharge or did discharge Grotemeyer or subject him to any penalty or deduction of wages earned because of the exercise of the privilege of voting. Grotemeyer was paid the amount due him for the work he did for Day-Brite Lighting, Inc. He was not penalized for voting or for taking time off for voting.''

This contention is not sound. It is the clear intendment of the act that the employee shall be paid during his authorized absence as though he had worked. Otherwise, of course, there could be neither penalty nor deduction. It would be an impossibility for the two necessary elements of the offense, to-wit: absence from work and deduction of wages during such absence, ever to come into coexistence under defendant's contention. Regardless of the validity of the act on constitutional grounds, its meaning is clear and the deduction of one and one-half hours from Grotemeyer's wages was a violation of its terms.

■ ■ The grounds on which defendant challenges the constitutionality of Section 11785 are: (1) violation of the due process clauses of the Constitution of the United States, as defined in Section 1 of the Fourteenth Amendment, and the Constitution of the State of Missouri, as defined in Section 10 of Article I; (2) denial of the equal protection of the laws to all persons within its jurisdiction, as defined in Section 1 of the Fourteenth Amendment of the Constitution of the United States and of Section 14 of Article I of the Constitution of Missouri; (3) impairment of the obligation of contracts as guaranteed by Section 10 of Article I of the Constitution of the United States and Section 13 of Article I of the Constitution of Missouri; and (4) violation of Section 28 of Article IV of the Constitution of Missouri of 1875, and of Section 23 of Article III of the Constitution of Missouri of 1945, which provide that no bill shall contain more than one subject, which shall be clearly expressed in its title. (There is another general claim of unconstitutionality which we consider inadequate and which is disposed of later herein.)

The state contends defendant has not properly raised the question of constitutionality. Each of these grounds, with the exception mentioned, was set forth with particularity in a timely motion to quash, the motion for new trial, and in defendant's brief. That is sufficient. Section 4125, Mo. R. S. A.; State v. Hammer, 333 Mo. 40, 61 S. W. 2d 965, 966. Especially is this true where it is evident from the entire record that the only issue before either the trial court or this court, except that the facts did not support the verdict, was

the constitutionality of that part of the section under which defendant was charged. City of St. Louis v. Friedman, 358 Mo. 681, 685, 216 S. W. 2d 475, 477.

It is apparent that Section 11785 is violative of the due process clauses of both the Federal and State Constitutions unless its enactment is within the police power of the State.

The State has placed in its brief a tabulation of statutes, dealing with the right of employees to absent themselves on election days. Sixteen states make it unlawful for the employer to dock the employee's wages during such absence, to-wit: Arizona, California, Illinois, Indiana, Iowa, Kansas, Minnesota, Missouri, Nebraska, New Mexico, New York, Ohio, South Dakota, Texas, West Virginia and Wyoming. Colorado and Utah statutes provide that there shall be no dockage except when the employee is paid by the hour. Six states authorize absence of the employee on election days, with no provision for payment of wages. Illinois and Kentucky statutes relating to the same subject matter have been held unconstitutional. A New York statute has been held constitutional.

Defendant strongly relies upon the case of People v. Chicago, Milwaukee & St. Paul Railway Co., 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610. It held unconstitutional a statute similar to Section 11785 on grounds that it deprived the employer of its property without due process of law, denied equal protection of the laws and was an unreasonable abridgement of the right to contract. That opinion was written in 1923. It is interesting to note that in 1944, the same court, referring to its 1923 opinion, commented: "It is urged that the State may not take private property nor money for a private use * * *, and the case of People v. Chicago, M. and St. P. R. Co., 306 Ill. 486, 138 N. E. 155, 158, 28 A. L. R. 610, is cited in support of such contention. * * * However, this [pay-while-voting] statute, re-enacted and amended from time to time, still contains this provision providing for the right of any citizen to be paid for the time consumed in exercising his right to vote. * * * The growing complexity of our economic interests has inevitably led to an increased use of regulatory measures in order to protect the individual so that the public good is reassured by safeguarding the economic structure upon which the good of all depends." Zelney v. Murphy, 387 Ill. 492, 56 N. E. 2d 754, 757.

Defendant also cites the case of Illinois Cent. R. Co. v. Commonwealth, 305 Ky. 632, 204 S. W. 2d 973, in which the Court of Appeals of Kentucky held a pay-while-voting statute of that state unconstitutional. The decision in this case was based on the 1923 Illinois decision. It extols at great length the sanctity of the voting privilege and holds constitutional that part of the statute giving the employee the right to absent himself for a period of four hours on election day, but condemns as violative of due process the part making it a misdemeanor to withhold his wages for so doing.

The opinion states: "The Commonwealth makes the contention that our legislative authority had a right, under the exercise of its police power, to adopt the law in question, since its adoption was in the interest of the general welfare of the public. * * * However, we have said that the legislative authority may not, under the guise of promoting public interest, arbitrarily interfere with private business. City of Louisville v. Kuhn, 284 Ky. 684, 145 S. W. 2d 851. And it is always appropriate to remember that the police power is not without its limitations, since clearly it may not unreasonably invade and violate those private rights which are guaranteed under either federal or state constitution. 11 Am. Jur. 992." Thus, the opinion goes from premise to conclusion, with no statement of the reasoning by which it was reached. It is not helpful.

As against the Illinois and Kentucky cases, the state cites the case of People v. Ford Motor Co., decided by Appellate Division of the Supreme Court of New York in 1946, 271 App. Div. 141, 63 N. Y. S. 2d 697. That case held constitutional a New York statute which makes it a misdemeanor to refuse an employee the privilege of voting or to deduct from his wages for exercising the privilege. We quote portions of it: "The statutes in question, in force for more than half a century, deal directly with a detail as to the exercise of the elective franchise—a subject matter which, under our form of government, is in itself a primary act of sovereignty. To take measures to insure the full and free performance of that act is therefore in the interest of the general welfare, and as such may be said to call forth 'society's natural right of self defense' which is inherent in sovereignty itself and which has been generally termed the police power. * * *

"An employer-employee relationship may be said to have in it such a power of dominance on the part of the employer as is capable of thwarting the wholesome exercise of the right to vote at an election. The fact that such abuses have occurred is historical. To avoid such evils, to encourage the right of suffrage, to keep it pristine and render it efficient—all this pertains to the public welfare and, in the attainment of those objectives, the burden which the statutes cast upon all in the role of an employer is one lawfully placed in a design for the common good, and the burden is so slight that it may not be said to be unduly oppressive. That the burden may bear unequally does not render its placement unlawful."

A precise definition of police power is not found. "It is not susceptible of circumstantial precision because none can foresee the ever-changing conditions which call for its exercise. Moreover, it has been held that these conditions render it inadvisable to define the power accurately." 11 Am. Jur., Constitutional Law, § 246, pp. 970, 971.

"Judge Cooley says that the police power of a state 'embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state,

but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others,' and the courts have quoted this definition with approval many times. Finally, it has been said that by means of this power the legislature exercises a supervision over matters involving the common welfare and enforces the observance, by each individual member of society, of the duties which he owes to others and to the community at large.'' Id. § 247, pp. 972, 973.

Discussing police power, this court said in Household Finance Corporation v. Shaffner, 356 Mo. 808, 818, 203 S. W. 2d 734, 739: ''Section 3, Article I, states that the police power of the state remains exclusively in the people; and Section 3, Article XI, provides that 'the exercise of the police power of the state shall never be surrendered'. It is a familiar principle that 'the state constitution is not a grant of power, but only a limitation, as far as the legislature is concerned'; and, therefore, except for the limitations imposed thereby 'the power of a state legislature is unlimited and practically absolute'. 11 Am. Jur. 894, Sec. 193.''

The police power of the state is frequently invoked in legislation relating to the economic and physical welfare and safety of employees and the public in general, all of which are an expense to the employer or the manufacturer; and such legislation is uniformly held constitutional in principle. Some of them are: workmen's compensation laws, unemployment compensation laws, semimonthly payment of wage laws, minimum wage and hour laws, Sunday labor laws, and the great multiplicity of safety and health laws. See cases referred to in State v. Day-Brite Lighting, Inc., supra, 1. c. 784; Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 81 L. Ed. 1245; Steward Mach. Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112.

If the economic and physical welfare of the citizenry is within the police power of the state, then political welfare merits its protection also. The right of universal suffrage is the attribute of sovereignty of a free people. We accept as a verity that ''Eternal vigilance is the price of liberty''. For the vast majority the only opportunity to exercise that vigilance is in the polling place.

''That every citizen should be given both the right and the opportunity to vote is a matter of public interest, and any law having for its purpose the guarantee of such right and opportunity should be upheld if it is possible to do so. Such we take it was the legislative purpose of the enactment of Section 11785. And the purpose or legislative intent was not to financially enrich the voter or to place an unnecessary and unreasonable burden on the employer. * * *'' State v. Day-Brite Lighting, Inc., supra, 1. c. 785.

Appellant argues that: "The Company is deprived of property of two kinds under this Statute. It is deprived of tangible property, that is, money that it is forced to pay to its employees for work not performed and for which the Company receives nothing. * * * If all employees were granted four hours off with pay from the scheduled work day it would cost the Company in this case $951.42 by way of pay to its employees and an additional sum of $7138.00 for loss of production."

It does not necessarily follow, however, that the act is thereby rendered unconstitutional. The figures quoted above have little probative value. They do not show, nor is there any evidence tending to show—either percentage-wise or otherwise—, their relationship to the overall cost of defendant's products.

In a well documented article on the subject of "Pay While Voting" in the Columbia Law Review of 1947, page 140, the writer makes this statement: "Whatever may be the wisdom of pay while voting statutes, they do not appear so arbitrary or unreasonable as to violate due process requirements. The burden imposed on the employer is relatively slight and the interest subserved, the right to vote, relatively high."

When we consider the infrequency with which elections are held in comparison with the total working days in a calendar year, we cannot say as a matter of law that the economic burden placed on employers by this statute is unreasonable.

To secure the free and open elections guaranteed by our State Constitutions (Constitution of 1875, Sec. 9, Art. II; Constitution of 1945, Sec. 25, Art. I), the General Assembly enacted legislation (Laws 1893, p. 157) to prevent corrupt practices in elections. Section 11785 was not in that act, but in 1897 (Laws 1897, p. 108) it was amended to include the present Sections 11785 to 11787. The Legislature, in effect, thereby declared that in order to more adequately secure free and open elections it was expedient to require employers to afford their employees not only an opportunity to vote but also that they might exercise that right without penalty or deprivation of wages.

In determining whether a statute is constitutional it is not the province of courts to determine its wisdom or adequacy. "The basic principles that courts only look to the constitutionality of legislation, and not to its propriety, justice, wisdom, necessity, expediency, or policy have constantly been applied in cases involving police regulations. If an act had a real and substantial relation to the police power, then no matter how unreasonable or how unwise the measure itself may be, it is not for the judicial tribunals to avoid or vacate it upon constitutional grounds." 11 Am. Jur. § 306, p. 1089.

"If there is any reasonable basis upon which the legislation may constitutionally rest the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. All facts necessary to sustain the act must be taken as conclusively found by

the legislature, if any such facts may be reasonably conceived in the mind of the court. * * * 'Nor do the courts have to be sure of the precise reasons for the legislation, or certainly know them, or be convinced of the wisdom or adequacy of the laws.' '' Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 1147, 125 S. W. 2d 23, 31.

We conclude that the provisions of Section 11785 are within the police power of the state and do not violate the due process clauses of either the Federal or State Constitutions.

■ Defendant invokes the last clause of Section 1 of the Fourteenth Amendment of the United States Constitution which forbids any state to deprive any person the equal protection of the laws (and refers to Section 14, Article I, Constitution of Missouri as a corollary). The cases cited in its brief support the principle announced in the amendment, but they are not decisive of the question involved here. They are: Truax v. Corrigan, 257 U. S. 312, 66 L. Ed. 254; Frost v. The Corporation Commission of the State of Oklahoma, 278 U. S. 515, 73 L. Ed. 483; State v. Miksicek, 225 Mo. 561, 125 S. W. 507; State v. Empire Bottling Co., 261 Mo. 300, 168 S. W. 1176; Ex Parte French, 315 Mo. 75, 285 S. W. 513; State v. Taylor, 351 Mo. 725, 173 S. W. 2d 902.

Defendant's argument is: ''It is submitted that the statute in question violates this constitutional guarantee in that it singles out as a class those who employ labor as against those who do not. It even goes further to single out one part of the labor-employing class; namely, those who employ labor on an hourly paid basis as opposed to those who employ labor paid by the week or the month.''

The courts have often decided that the classification of the relations of employers are proper and necessary for the welfare of the community. Truax v. Corrigan, supra. When all persons within the purview of a statute are subjected to like conditions, then they are afforded equal protection of the law. Stone v. City of Jefferson, 317 Mo. 1, 293 S. W. 780; Hull v. Baumann, 345 Mo. 159, 131 S. W. 2d 721; St. Louis Union Trust Co. v. State of Missouri, 348 Mo. 725, 155 S. W. 2d 107. ''* * * as long as the law operates alike on all members of a class * * * it is not subject to any objections that it is special or class legislation.'' 11 Am. Jur., Constitutional Law, § 478, p. 144.

Section 11785 is singularly free from the criticism levelled against it by this assignment. It applies with complete uniformity of duty and privilege, respectively, to all employers and to all employees, without regard to the method of computing their compensation. This contention is ruled against defendant.

■ Defendant contends that Section 11785 violates Section 10, Article I, of the Constitution of the United States and Section 13, Article I, of the Constitution of Missouri. These sections forbid legislation impairing the obligations of contracts.

Freedom of contract is always qualified by valid police regulations. "This power under the Constitution to restrict freedom of contract has had many illustrations. That it may be exercised in the public interest with respect to contracts between employer and employee is undeniable. Thus statutes have been sustained limiting employment in underground mines and smelters to eight hours a day * * *; in limiting hours of work of employees in manufacturing establishments * * *; and in maintaining workmen's compensation laws * * *. In dealing with the relation of employer and employed, the legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression. * * *" West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330.

In the case of Gideon-Anderson Lumber Co. v. Hayes, 348 Mo. 1085, 156 S. W. 2d 898, 899, this court quoted with approval from Atlantic Coast Line Rd. Co. v. Riverside Mills, 219 U. S. 186, 202, 31 S. Ct. 164, 169, 55 L. Ed. 167, as follows: "It is obvious, from the many decisions of this court, that there is no such thing as absolute freedom of contract. Contracts which contravene public policy cannot be lawfully made at all; and the power to make contracts may in all cases be regulated as to form, evidence, and validity as to third persons. The power of government extends to the denial of liberty of contract to the extent of forbidding or regulating every contract which is reasonably calculated to injuriously affect the public interests."

Having determined that the subject matter of Section 11785 is within the police power of the state, that it is not shown as a matter of law to be unreasonably burdensome, and that it is calculated to protect the general welfare of the people, we hold it does not unconstitutionally impair the obligations of the contract between defendant and its employees.

Is the act, of which Section 11785 is a part, in contravention of Section 23, Article III, Constitution of 1945? This provision was also in the Constitution of 1875 as Section 28, Article IV. It provides that "no bill * * * shall contain more than one subject, which shall be clearly expressed in its title". Section 11785 is an amendment to the "corrupt practice act" of 1893 (Laws 1893, p. 157). The title of the original act is: "AN ACT to prevent corrupt practices in elections, to limit the expenses of candidates, to prescribe the duties of candidates and political committees, and provide penalties and remedies for violation on [of] this act". No fault is found with the title of the original act.

The complaint is that the sections added by an amendatory act of 1897 (Laws 1897, p. 108), one of which is now Section 11785, were

not germane to the subject matter of the original act; and that, inasmuch as the amendatory act of 1897 adopted by reference and without change the title of the original act, the new subject matter thus added is not clearly expressed in its title.

"If the title of an original act is sufficient to embrace the provision contained in an amendatory act, it will be good, and it need not be inquired whether the title to the amendatory act would, of itself, be sufficient." State ex rel. Drainage District v. Hackmann, 305 Mo. 685, 701, 267 S. W. 608. See also Young v. County of Greene, 342 Mo. 1105, 119 S. W. 2d 369, and cases therein cited.

We, therefore, look to the title of the original act to determine whether the subject matter of the amendatory act is "germane to and within the scope of the general purpose of the bill (original act) as declared in its title and which, although not set forth in the particulars expressed in the title, are not out of harmony with them". Graves v. Purcell, 337 Mo. 574, 85 S. W. 2d 543, 548. See also Edwards v. Business Men's Assur. Co., 350 Mo. 666, 168 S. W. 2d 82, 83.

Section 11785, by its terms, makes it a crime for an employer to deny its employees ▇▇▇▇ the privilege of absenting themselves from their work on election days and a crime to dock their wages if they do. In essence, therefore, the employer who practices the acts condemned by the statute, as did defendant, is guilty of "corrupt practices in elections", which is the first definitive phrase of the original act. We will not further labor the matter. The title of the amendatory act, by its reference to the original, is sufficient.

▇▇ Finally, it is urged that Section 11785 is in conflict with 11786 and is, therefore, unconstitutional "in that, if defendant should conform with the provisions of Section 11785, it would then necessarily be in violation of Section 11786, R. S. Mo. 1939". We are pointed to no constitutional provision to support the contention, and we find none. The assignment is insufficient to raise the question. State ex rel. Karbe v. Bader, 336 Mo. 259, 78 S. W. 2d 835.

The contention, however, obviously is without merit. Section 11786 provides: "It shall not be lawful for any corporation * * * to induce or persuade any employee * * * to vote or refrain from voting for any candidate, or on any question to be determined or at issue at any election. * * *" Section 11785 is directed at the employer who refuses to give the employee time to vote or penalizes him if he takes the time. Section 11786 is directed at the employer inducing or persuading the employee how to vote. They are not in conflict.

The judgment of the trial court is affirmed. *Dalton, Leedy* and *Tipton, JJ.,* concur; *Hyde, J.,* dissents in separate opinion; *Vandeventer, Special Judge,* dissents in separate opinion and concurs in dissenting opinion of *Hyde, J.; Conkling, J.,* dissents and concurs in

separate dissenting opinions of *Hyde, J.*, and *Vandeventer, Special Judge.*

HYDE, J.—I respectfully dissent from the ruling that a crime was committed in this case. Strict construction of criminal statutes is a fundamental principle of our law. "Criminal statutes are to be construed strictly: liberally in favor of the defendant and strictly against the State, both as to the charge and the proof. No one is to be made subject to such statutes by implication." (State v. Bartley, 304 Mo. 58, 263 S. W. 95; See also State v. Lloyd, 320 Mo. 236, 7 S. W. (2d) 344; State v. Taylor, 345 Mo. 325, 133 S. W. (2d) 336; State v. Dougherty, 358 Mo. 734, 216 S. W. (2d) 467; Tiffany v. National Bank of Missouri, 85 U. S. 409, 18 Wall. 409, 21 L. Ed. 862.) A defendant should not be held to have committed a crime by any act which is not plainly made an offense by the statute.

The statute in this case, Sec. 129.060, R. S. 1949, is as follows: "Any person entitled to vote at any election in this state shall, on the day of such election, be entitled to absent himself from any services or employment in which he is then engaged or employed, for a period of four hours between the times of opening and closing the polls; and such voter shall not, because of so absenting himself, be liable to any penalty: PROVIDED, HOWEVER, that his employer may specify the hours during which such employee may absent himself as aforesaid. Any person or corporation who shall refuse to any employee the privilege hereby conferred, or shall discharge or threaten to discharge any employee for absenting himself from his work for the purpose of said election, or shall cause any employee to suffer any penalty or deduction of wages because of the exercise of such privilege, or who shall, directly or indirectly, violate the provisions of this section, shall be deemed guilty of a misdemeanor, and on conviction thereof be fined in any sum not exceeding five hundred dollars."

The first sentence states the privilege conferred upon an employee. The second sentence makes it a crime for an employer to refuse to any employee the privilege conferred by the first sentence. Nowhere in the first sentence is it stated that the privilege includes payment by the employer to the employee for time or activity not covered by the terms of his employment. It only says that he shall not be liable to any penalty. When, as here, the contract (under which the employee agrees to work and under which the employer obligates himself to pay) provides that the employee is to receive $1.60 per hour for each hour worked, there could be no penalty by not paying him what he has not earned. It is true that the second sentence of the statute makes imposing a "penalty or deduction of wages" an offense, and thereby includes "deduction of wages" in the definition of the term "penalty"; but how can there be a "deduction of wages" unless some wages have been earned? It is conceded here that the

employee was paid for the full time he had worked on election day and every other day. How can an employee, who is paid on the basis of so much per hour for every hour worked, and who receives pay at the agreed rate for every hour of work actually performed, be subjected to "deduction of wages" by not being paid more? There must first be a right to wages before there can be a deduction of wages, and there is nothing in this statute which creates a right to any wages or pay beyond that for which the parties have contracted. Therefore, no duty is imposed on an employer to pay more than is provided for by the contract of employment made by the parties themselves. I think to construe it otherwise would be to make such employers and employment contracts subject to this statute purely by implication, and to me a very far fetched implication at that.

Furthermore, I think to construe this statute as creating a right to wages beyond and in addition to what the parties have agreed upon, would make it unconstitutional as including an additional subject not clearly expressed in the title, in violation of Sec. 23, Art. III of our Constitution. This is a very broad statute; it covers every election of any kind and every kind of employment, agricultural and domestic, as well as industrial. Surely to create such a broad and all inclusive right and obligation as to require any person, who employs another to work and be paid by the hour, to also pay him on any election day for the time he takes to vote (up to four hours) is a new subject to our law and our economy. The purpose of this section of the Constitution is to prevent the public and the members of the Legislature from being misled as to the contents of a bill. (State ex rel. United Railways Co. v. Wiethaupt, 231 Mo. 449, 133 S. W. 329; State ex inf. Barrett v. Imhoff, 291 Mo. 603, 238 S. W. 122; see also Hunt v. Armour & Co., 345 Mo. 677, 136 S. W. (2d) 312.) The title to this act was: "An Act to Amend an Act Entitled 'An Act to Prevent Corrupt Practices in Elections, to Limit the Expense of Candidates, to Prescribe the Duties of Candidates and Political Committees, and Provide Penalties and Remedies for Violation of This Act,' approved March 31, 1893, by inserting between Sections 4 and 5 three new sections to be known as Sections 4a, 4b and 4c." (Laws 1897, p. 108.) It seems to me clear that neither this title, nor the title to the original "Corrupt Practices Act" included in it, gave any indication whatever that a new right was being created to obligate every employer to pay wages to anyone employed by him, for time taken to vote, in addition to the wages and method of work and payment agreed on between them.

It is, of course, highly desirable to include in the corrupt practices act a prohibition against any influence or intimidation of an employee by an employer and certainly also against imposing any penalty or making any deduction of wages actually earned and due under the contract between them. It is equally important to safeguard the

employee's right of franchise by requiring his employer to allow him time to vote; and to make a violation of such obligations by the employer a criminal offense. An employee, whose contract is to be paid by the month or year, has, of course, earned his pay even **[897]** though he has taken off from his duties some time to vote or for other personal purposes. It would certainly be a violation of the employment contract, as well as a corrupt practice, for an employer to hold out part of compensation earned, under such circumstances. However, the matter of time of service and method of compensation is a matter of contract, at least until the State steps in to regulate it, and certainly when the State does decide to do so (by fixing maximum hours, minimum hours or requiring pay for an outside activity) that is a separate and distinct subject from election laws or corrupt election practices.

I think the judgment should be reversed. *Conkling, J.,* and *Vandeventer, Special Judge,* concur.

VANDEVENTER, SPECIAL JUDGE.—In addition to the reasons given by Judge Hyde in his dissenting opinion, in which I concur, I think this cause should be reversed because that part of Sec. 11,785 upon which this conviction is based conflicts with the State and Federal Constitutions. I believe that section (now Sec. 129.060 R. S. Mo. 1949) is unconstitutional in so far as it makes it a crime for an employer to *deduct* from the pay of his employee the amount of time lost by the employee in absenting himself on election day. In my judgment, it violates the provisions of both the state and federal constitutions which forbid the taking of property without due process of law, and guarantees to every citizen the equal protection of the law. (Am. XIV Const. U. S. Sec. 1. Art. 1, Sec. 10, Const. Mo. 1945) The statute in question is as follows:

"*Any person entitled to vote at any election* in this state *shall,* on the day of such election, *be entitled to absent himself from any services or employment in which he is then engaged or employed,* for a period of four hours between the times of opening and closing the polls; and such voter shall not, because of so absenting himself, be liable to any penalty: PROVIDED, HOWEVER, that his employer may specify the hours during which such employee may absent himself as aforesaid. *Any person or corporation who* shall refuse to any employee the privilege hereby conferred, or shall discharge or threaten to discharge any employee for absenting himself from his work for the purpose of said election, or *shall cause any employee to suffer any* penalty or *deduction of wages because of the exercise of such privilege,* or who shall, directly or indirectly, violate the provisions of this section, shall be deemed guilty of a misdemeanor, and on conviction thereof be fined in any sum not exceeding five hundred dollars." (Italics mine)

A careful reading of this statute demonstrates that its main purpose was to allow every employed citizen to absent himself from his labor on election days long enough to cast his ballot. There is nothing in this statute that requires him to vote, although he may demand four hours relief between the opening and closing of the polls. The part that I think is unconstitutional is that · part which condemns the employer if he *deducts* any of the employee's wages. Really, it isn't a deduction of wages for the employee has rendered no services for which he should be paid. The statute apparently means that if the employer fails to pay the employee for work that he does not do during the usual working hours when the employee is absent, the employer is deemed guilty of a misdemeanor. He is guilty, according to the statute, if he "shall cause any employee to suffer any * * * deduction of wages because of the exercise of such privilege, * * *." The privilege given by the words of the statute is not the privilege of voting but it is the privilege of absenting himself for four hours between the opening and closing of the polls. Whether reference to the privilege or duty of voting was left out deliberately and designedly, we have no way of knowing, but clearly under the statute, the employer could be punished for deducting any wages of the employee during the time he has absented himself, whether he voted or not. However, if the statute did specifically say that the employee must vote, if he takes the time off, I am still of the opinion that it ▬▬▬ attempts to take property of the employer without due process of law, and denies him the equal protection of the law.

. Due process of law, when referring to legislation, has been defined as follows:

"As applied to legislation, due process of law means statutes that are general in operation and affect the rights of all alike."

(16 C. J. S. Constitutional Law, Sec. 567 (c) Page 1145)

It does not mean merely an act of the legislature, for such a construction would abrogate all restrictions on legislative power. Pauly v. Keebler, 185 N. W. 554, 175 Wis. 428.

There are decisions that hold squarely under a statute almost identical with this one that it is violative of these constitutional guarantees. Those cases are: People v. Chicago, M. & St. P. R. Co., 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610. McAlpine v. Dimick, 157 N. E. 235, 326 Ill. 240, 245. Illinois Cent. R. Co. v. Commonwealth, 204 S. W. (2) 973, 305 Ky. 632, Cer. den. 92 L. Ed. 1767, 334 U. S. 843, 68 S. Ct. 1511.

Division One says in its opinion:

"It is apparent that Section 11785 is violative of the due process clauses of both the Federal and State Constitutions unless its enactment is within the police power of the State."

So if it can be justified at all, it must be based on the valid exercise of the police power. I recognize that while "police power" cannot

be definitely and briefly defined in such a way as to embrace all sets of facts that might face the courts, yet a general definition is epitomized in C. J. S. as follows:

"Police power is the exercise of the sovereign right of a government to promote order, safety, health, *morals,* and *the general welfare of society,* within constitutional limits." (16 C. J. S. Constitutional Law, Sec. 174)

If Section 11785 (129.060 R. S. Mo. 1949) is to be held within the police power, it certainly would be under "morals" or "the general welfare of society." But section 196 of C. J. S. Constitutional Law, tersely states "The exercise of the police power is subordinate to constitutional limitations thereon."

So far as we have been cited, or I have been able to find from an independent investigation, the first and leading case in the United States directly on this question is the case of People of the State of Illinois v. Chicago, Milwaukee and St. Paul Railway Co., 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610. An annotation at the end of that case in A. L. R. confirms my opinion that it is a case of first impression. In that case the Supreme Court of Illinois had under consideration a statute almost identical with the one before us except it permitted the employee two hours absence instead of four That Court said:

"Under our state and Federal Constitutions every person is guaranteed the equal protection of the law in the right to own, use, and enjoy property. These Constitutions also distinctly provide that the property of no person shall be taken unless compensation be given to him for such invasion of his rights. Any law that deprives any person of his property or compels him to deliver to any person his property without justification deprives him of property without due process of law. The section of the statute above quoted violates the provision of our Constitution aforesaid by providing, in substance, that no deduction from the usual salary or wages of the employee shall be made by his employer on account of such absence, and by subjecting the employer to the penalty aforesaid in case he makes such deduction from the employee's wages. There is no justification or sound reason to be found in the law for making such a discrimination between an employer of labor and other persons who do not employ labor, and it likewise is a clear violation of the due process clause of the 14th Amendment to the Federal Constitution. The legislative branches of this government and of this state have gone to the utmost limits in legislation to protect the lives, health, and safety of employees, and the courts of this country, including this court, have also gone far in sustaining those laws wherever and whenever it reasonably appeared that such laws were necessary or beneficial in protecting the lives, health, and safety of such employees while at work, without regard to the question of cost

to employers. The same courts have gone equally far in sustaining laws that guarantee the equal and untrammeled right of every citizen to exercise his right of franchise and to cast his vote at every election as he pleases and for whom he pleases, and without hindrance or undue influence of any kind by any person; but, so far as we know, no court has ever decided in any case that it was the right of any citizen, under any circumstance, to be paid for the privilege of exercising his right to vote or to be paid by his employer for the time employed by him in the exercise of his right to vote. The statute in this case in substance requires employers of laborers to pay them for two hours' time while exercising their right to vote, and thus deprives such employers of their money and property without due process of law, and thereby denies them the equal protection of the laws, in violation of both the Federal and State Constitutions.''

The State of Illinois in this case argued, as is argued here, that this statute was a valid exercise of the police power but that contention was considered by the court and it said:

''It is true that the state does have the right, under its police powers, to pass laws that tend to promote the health, safety, or morals of such employees as Turney, because of the fact that such laws would tend to promote the health, comfort, safety, and welfare of society. The act in question, as contended by plaintiff in error, does not in any way, so far as we are able to see, tend to promote the health, safety, or morals of such employees. The provisions in question are not adapted to the object for which the law was enacted, and cannot be said to secure public comfort, welfare, safety, or public morals. There is no contention, and there can be none made with any reasonable showing, that the provision in question tends to promote the safety or health of any employee. It has always been the policy of our laws to condemn the idea of any voter being paid for exercising the privilege of an elector or voter. The right to vote is simply one of the privileges guaranteed to every citizen of this country who possesses the requisite qualifications. It is not only a right, but should be regarded as a duty of the citizen, where he is reasonably able physically to perform that duty. It is not the constitutional right of any citizen to be paid for the exercise of his right to vote, and the holding of the provision of the statute void does not violate the right of any citizen, including those who are employed to labor. This provision of the statute is not sustainable under the police power of the state, and it does violate the constitutional provisions aforesaid, and therefore must be declared void. Besides, 'no exercise of the police power can disregard the constitutional guaranties in respect to the taking of private property, due process, and equal protection' of the laws, and it should not 'override the demands of natural justice.' ''

320

In the case of McAlpine v. Dimick, 326 Ill. 245, 157 N. E. 235, the question was again before the Supreme Court of Illinois and that court reaffirmed its doctrine in People v. Chicago, Mil. & St. Paul Railway Co. Supra, saying:

"The provision of section 7, giving employees the right to absent themselves from their employment for two hours on election day for the purpose of voting without any deduction from their salaries or wages on account of such absence is also unconstitutional, being a violation of section 2, article 2 of the Constitution."

If it was unconstitutional then, it is now. The Constitutional provision and the statute remain the same. A valid exercise of the police power cannot transcend the Constitution.

In Zelney v. Murphy, 387 Ill. 492, 56 N. E. (2) 754, which was a suit for unemployment compensation, the court mentioned the case of People v. Chicago, Milwaukee and St. Paul R. R. Co. and said:

"The statute there, as questioned, provided a penalty for any employer who made a deduction in wages for a period of two hours used by such employee in voting at any general or special election and the court held that it was not the constitutional right of any citizen to be paid for the time consumed in exercising the right to vote. The court further said: ' "No exercise of the police power can disregard the constitutional guaranties in respect to the taking of private property, due process and equal protection" of the laws.' This holding was approved in McAlpine v. Dimick, 326 Ill. 240, 157 N. E. 235. However, this statute, reenacted and amended from time to time, still contains this provision providing for the right of any citizen to be paid for the time consumed in exercising his right to vote. These cases, of course, could not be controlling as to the statute under consideration here and especially in view of the growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare."

The fact that the statute has been re-enacted and amended, placed and maintained, on the statute books and apparently never enforced, does not make it constitutional. The statute in this state was enacted more than 50 years ago and the fact that there are no decisions on it until now does not inferentially or otherwise tend to prove its constitutionality. More likely it proves that there has never been any attempt to enforce it. The case at bar seems to be the first one, as far as the books show, where this State has endeavored to punish an employer for refusing to pay an employee under these circumstances. And I can find no attempt on the part of any employee to collect such, as it appears to me, unrighteous compensation. I had rather believe that absence of precedent is due to the fact that the workers of Missouri have resented the legislative implication that they will not exercise that privilege of free men without being paid for it.

I had rather think that in their scales the right to vote outweighs a few hours pay.

In Illinois Central Railway Company v. Commonwealth, 305 Ky. 632, 204 S. W. (2) 973, the same question was up and that court held it unconstitutional both under the Kentucky Constitution and the Constitution of the United States. As I read that opinion, it did not base its decision upon the People v. Chicago, Milwaukee & St. P. R. Co., supra, but after it had discussed the statute, its reasons for holding it unconstitutional, and then declaring its unconstitutionality under the Kentucky Constitution, it said this:

"We also believe that the wage-payment-for-voting-time provisions of this statute are antagonistic to the United States Constitution, particularly that provision which says that no state shall deprive any person of his property without due process of law or deny to any person in its jurisdiction the equal protection of the law.

"So far as we know, there has been only one case of this exact character decided by any court of last resort in the United States. The holding of that one case was that such a law as this one now under consideration, passed by legislative authority in the State of Illinois, could not meet constitutional standards and must accordingly fall in the face of the fundamental restrictions of organic law. See People v. Chicago, M. & St. Paul Ry. Co., 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610."

It seems to me that this question here boils itself down to this proposition, can the legislature, without violating the provisions of the Constitutions, compel an employer to pay wages to his or its employee for four hours, or any other amount of time, that he absents himself on election day and for which he gives his employer no service?

It is the duty of every good citizen to vote. On that day, and only then, he stands equal with every other citizen. Of course, the employer should not be permitted to deprive him of this duty by refusing to let him leave the place of his employment. To penalize him if he does is certainly a valid exercise of the police power and promotes the general welfare of the country in increasing the number of voters and thereby make the questions to be determined at the polls represent the voices of a greater number. But to require the employer to pay him while absenting himself on election day (or for going to the polls to vote although the statute does not require that) does not promote the morals of the citizens but in my judgment, has the opposite effect. To pay a voter for going to the polls to vote is the first step toward corruptly influencing him to vote a certain way.

What benefit does the employer receive by the employee voting that is different to the benefit that the voter himself receives or any third person interested in a fair expression of opinion at the polls? He benefits no more than anyone else, including the employee. It certain-

ly does not indicate high morals on the part of a citizen to abstain from going to the polls unless somebody pays him, or unless he can do so without losing a small amount of wages. As a matter of fact, this employee, as most employees in this modern age of the eight hour day, had plenty of time either before going to work or after quitting time to cast his ballot without interrupting his service to his employer.

All good citizens should exercise the privilege of voting. It should be exercised voluntarily without any strings attached. He should desire on this day to be equal with all other citizens without any influence from any source except his own considered judgment of the candidates to be selected or the issues to be decided. If he receives pay for voting, he must feel a certain sense of obligation to the payor. It has always been the policy of a democracy to condemn the hiring of people to vote, to the end that the manner of marking their ballot would not be corruptly influenced.

It might be argued that it would be for "the general welfare" and foster more amicable relations between the employer and employee, if the statute is followed and the employer pays the employee. Such a feeling could be based only upon a sense of obligation which would restrict the free exercise of the right to vote according to one's own lights.

But it is more likely that the employee, so paid, would not attribute this benefaction to his employer but the enforcement of the statute would transmute loyalty to the employer into gratitude to the legislature. In either event, the result would not be beneficial to the general welfare.

It will be noted that this statute does not apply to certain elections, it applies to all elections and the only requirement is that it be an election in which the employee is "entitled to vote". The sole object of the Corrupt Practice Acts of the various states and nation is to procure a free expression in the voting booth. The voter should go there voluntarily and in theory, at least, express his honest convictions on the candidates and issues. He should not go there as the hired hand of his master on the time that his master is compelled to pay for, in exercising his privileges as a citizen. To require his employer to pay him for voting or pay him for the absenting of himself from his job, so he may vote is, in my opinion, immoral in itself and at variance with this country's policy of free and unhampered elections. The general welfare of the state will be best conserved if the voter exercises his right to vote on his own time uninfluenced by the feeling that he is an employee in his master's service and on the payroll at the time he is doing that which he should only do as a citizen. This privilege should not be measured in dollars.

There are also cases which seem to hold that such statutes are justified as a valid exercise of police power. They are: People v. Ford Motor Co., 271 App. Div. 141, 63 N. Y. S. (2) 697. Kouff v.

Bethlehem-Alameda Shipyard, Inc. (Cal. App.) 202 Pac. (2) 1059. Lee v. Ideal Roller & Mfg. Co., 92 N. Y. S. (2) 276. Ballarini v. Schlage Lock Co. (Cal.) 226 Pac. (2) 771.

The cases to, the contrary in my opinion are not as well reasoned and logical as the ones above referred to.

In People v. Ford Motor Co., 271 App. Div. 141, 63 N. Y. S. (2) 697, the Company was convicted and fined $100.00 on each of three counts for subjecting employees to a reduction of wages because of absence from work, while exercising the privilege of attending an election.

 The majority opinion did not discuss the constitutionality of the statutes. It was discussed, however in a lengthy and well reasoned dissenting opinion by Lawrence, J., and at the close of that opinion, he said:

> "So far as any case has been brought to my attention and so far as I have been able to discover, no court has decided that it is the right of any voter, under all circumstances, to be paid for the privilege of voting. The statute here requires employers to pay their employees for two hours of time while exercising the right to vote, whether that is necessary or not and thus deprives them of their property without due process and denies them the equal protection of the law, in violation of both the federal and state constitutions."

In Kouff v. Bethlehem-Alameda Shipyard, Inc. (Cal. App.) 202 Pac. (2) 1059, the question before the court was the legality of the discharge of an employee because he had taken off time to serve as an officer of election on election day. It was held that the statutory requirement was not unconstitutional. The court cited and discussed People v. Chicago, M. & St. Paul R. Co., supra and Illinois Central R. v. Commonwealth, supra and said:

> "It is interesting to note that both cases concede that that part of the statute requiring employer to allow time out to vote—2 hours in Illinois and 4 in Kentucky—is a proper exercise of power. It was for a violation of the part requiring full pay that both railroads were prosecuted. Although those cases deal with time out for voting, while this deals with time out for election-board service, there is no essential difference between the statutory language in those cases and that of section 696, viz., 'nor shall any deduction be made from his usual salary or wages.' However, it is not necessary for us to express any opinion as to the constitutionality of the part of section 695 just quoted. It suffices to say that it is clearly separable from the dismissal provision. See 12 Cal. Jur. pp. 643, 644. If the state can prevent employers from discharging employees because they serve on election boards, it follows that the complaint states a cause of action for unlawful discharge."

In the case of Lee et al. v. Ideal Roller & Mfg. Co., 92 N. Y. S. (2) 726, the cause was tried in the municipal court, Scileppi, Justice, presiding. The facts in that case were dissimilar to the one here. In that case an employee had worked 38 hours in a week and had been paid for 40 hours because of two hours off on election day. He was then called upon to work 4 more hours on Saturday after he had only worked 38 hours but had been paid for 40. Under a Union contract for overtime above a 40 hour week, he was to receive time and one-half. He contended that the two hours for which he was paid and did not work should be counted in the 40 hour week so he could get time and one-half for the full four hours worked on Saturday. His employer contended otherwise but Scileppi, Justice, held for the employee and rendered judgment against the defendant for the 4 hours worked on Saturday at overtime wages. No case is cited in the opinion as authority, no constitutional question was discussed and the only issue was whether to count the two hours that were paid for that were not worked in the 40 hour week so the full four hours on Saturday would be paid at the overtime rate. In its opinion, Scileppi, Justice, said:

"It is conceded by the defendant that if the plaintiffs had actually worked eight hours on Election Day, with two additional hours off to vote, the plaintiffs would be entitled to two hours pay at overtime rate for that day."

This case is therefore not in point here.

In Ballarini v. Schlage Lock Co., 226 Pac. (2) 771, the Appellate Department, Superior Court, City and County of San Francisco, California was considering a statute in all essentials the same as ours. This statute had been enacted in 1881 and until November, 1950 had never been before the courts. It permitted every voter at every general, direct primary or presidential primary election to be absent from his employment for two consecutive hours between the time of opening and the time of closing the polls. It provided that he should not be liable to any penalty "nor shall any deduction be made on account of (any) such absence from his usual salary or wages." This case never ▓▓▓▓ pretended to separate the two elements of the statute that is, the right to be absent and the right to be paid. It merely stated that when persons enter into a contract, all material statutes affecting it are read into the contract by the law. That, in the abstract, is a true statement but it has this excepion, that it does not apply to an unconstitutional statute or part of one. The court then held that this statute taken as a whole was a valid exercise of police power and became a part of every contract entered into between employer and employee after its enactment.

I am not much impressed with the argument of appellant about the loss of production. When it entered into its contract with the employee, whether actually written into it or not, that contract included the provisions of all *valid* material statutes. 17 C. J. S. Contracts,

Sec. 330. When it contracted with its employee, it knew that on election days he was entitled to a leave of absence for four hours between the hours of opening and closing of the polls. In my judgment, that provision went into the contract, was a part of it, was a valid exercise of the police power and any loss occasioned by it because of the non-productivity of its plant was nothing about which it could complain. But to take money from the pocket of the employer whether it be $2.40 for an hour and one-half or the same sum multiplied by the number of its employees, is taking the property of one segment of society and giving it to another without anything in return and this without considering the immoral aspect of paying an employee for exercising his privilege and duty to vote. That part of the statute was unconstitutional and did not become a binding part of the contract. People ex rel. v. Coler, 59 N. E. 716, 166 N. Y. 1, 82 Am. S. R. 605, 52 L. R. A. 814, Affirmed 67 N. Y. S. 701, 56 App. Div. 98. Cleveland v. Clements Bros. Const. Co., 65 N. E. 885, 67 Ohio St. 197, 93 Am. S. R. 670, 59 L. R. A. 755.

In the case written by the St. Louis Court of Appeals (State v. Day-Brite Lighting, Inc., 220 S. W. (2) 782) it was merely held, as to the matter now in question before this court, that the information charged an offense under the statute. It construed the statute as it found it, and did not pretend to pass (as indeed it could not) upon its constitutionality. I have no disagreement with its holding that the right for an employee to absent himself from his employment, and the penalizing of an employer if he prevented him from the "exercise of such privilege," is within the valid exercise of the police power of the state.

An employer is deprived of his property without due process of law and denied the equal protection of the laws if he is compelled to pay wages during the absent period, where no service for the employer is performed and where the period of absence is for the benefit and convenience of the employee. Such a violation of an employer's rights cannot be hallowed by the police power. *Conkling, J.,* concurs.