[Criminal No. 424.   Filed June 23, 1917.]

[166 Pac. 275.]

ARIZONA POWER COMPANY, a Corporation, Appellant,
v. STATE, Respondent.

1. CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT—RIGHT TO RAISE QUESTION.—A corporation, accused of failure to pay wages to an employee on his discharge or leaving its service, in violation of Penal Code of 1913, section 705, is in no position to claim that the act violates Constitution, article 2, section 18, prohibiting imprisonment for debt; the punishment as to a corporation being merely a fine.

2. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS.—A corporation organized after enactment of Penal Code of 1913, section 705, requiring payment of wages to employees at once on their leaving the company's service, cannot object that the law is unconstitutional, as impairing the obligation of contracts, and therefore in violation of Constitution of the United States, article 1, section 10, and Constitution of Arizona, article 2, section 25.

[As to validity of statutes regulating time of payment of wages, see note in Ann. Cas. 1916B, 135.]

3. POLICE POWER—REGULATION OF RELATIONSHIPS—MASTER AND SERVANT.—The power of the legislature to enact statutes requiring payment of wages to employees at once on their leaving the employment of a corporation is one of the police powers.

4. CRIMINAL LAW — CRIMINAL OFFENSES — VALIDITY — "AT ONCE." — Penal Code of 1913, section 705, providing that, whenever an employee quits the service or is discharged, he shall be paid the wages due him at once, is not void for uncertainty; the words "at once" meaning, not *instanter*, but with as little delay as may be occasioned by active and continuous effort in good faith by the employer to ascertain and pay the wages.

5. MASTER AND SERVANT—PAYMENT OF WAGES—CRIMINAL OFFENSES—STATUTES—VALIDITY.—Where an employee quit work and gave due notice on September 23d, the employer's failure to pay his wages until October 5th, its regular pay day, without excuse offered, constituted a violation of Penal Code of 1913, section 705, requiring payment of wages at once.

APPEAL from a judgment of the Superior Court of the county of Yavapai. Frank O. Smith, Judge. Affirmed.

Mr. Le Roy Anderson, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Geo. W. Harben and Mr. R. W. Kramer, Assistant Attorneys General, for the State.

ROSS, J.—An information was filed against the appellant, charging it with violating sections 705 and 706 of the Penal Code of 1913, in failing and refusing to pay one of its employees the wages due the employee at the time of his quitting the service. The sections referred to read as follows:

"705. Whenever an employee quits the service or is discharged therefrom, such employee shall be paid whatever wages are due him, in lawful money of the United States of America, or by check of even date, on a bank, and said wages shall be paid at once.

"706. Every contractor mentioned in section 704 hereof, and every corporation (except municipal corporations) violating any of the provisions of the two preceding sections shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars for each offense."

The facts are undisputed; the only contest being over the validity of the law. The case was tried by the court without a jury, and from the verdict and judgment of conviction this appeal is prosecuted.

The appellant contends that the statute violates section 18, article 2, of our Constitution, which forbids imprisonment for debt, except in cases of fraud. The penalty provided for its breach is a fine, and not imprisonment, and, so far as the appellant is concerned, other provisions of our law authorizing imprisonment in some cases for failure to pay fine cannot affect it; a corporation cannot be imprisoned. *Ex parte Crane*, 26 Cal. App. 22, 145 Pac. 733, relied upon by appellant is not in point, in that Crane was actually imprisoned for debt. It is not possible, in fact or in law, to imprison appellant, either on mesne or final process; it cannot, as an individual, be arrested or committed to jail. The other two cases (*State* v. *Paint Rock Coal Co.*, 92 Tenn. 81, 36 Am. St. Rep. 68, 20 S. W. 499, and *State* v. *Prudential Coal Co.*, 130 Tenn. 275, L. R. A. 1915B, 645, 170 S. W. 56), cited by appellant fully sustain its contentions, but we cannot agree with the court's reasoning in the decision of those cases.

The Tennessee statute made it a misdemeanor for any corporation doing business in that state not to pay its employee his wages in lawful money semi-monthly on the 15th and 30th of each month, and fixed the punishment as a fine only. The law was held unconstitutional in both the above cases for the stated reason:

" 'The act of the legislature in question, while not directly authorizing imprisonment for debt, does attempt to create a crime for the nonpayment of debts evidenced by check, scrip, or order, and for such crime provides a penalty, which may or may not be followed by imprisonment. In that way and for that reason the act is violative of the spirit, if not the letter, of the constitutional provision above cited. It is an indirect imposition of imprisonment for the nonpayment of debt, and is therefore clearly within the constitutional inhibition.' On failure to pay any fine adjudged, by operation of law imprisonment would be imposed on the violator of the statute, if valid."

The reason given, when applied to a natural person charged with violating the statute, may be satisfactory and sufficient; but just how a corporation failing to pay a fine may be placed behind iron bars is not conceivable—indeed, it is not possible. If the fine is ever collected, it will not be by jailing the corporation, but by execution against its property. The constitutional inhibition is against imprisonment for debt; it does not prohibit the use of other means to enforce the payment of a just debt. The stigma of imprisonment is forbidden, and while the debtor, honest and dishonest, is thus protected by the Constitution, the legislature is not denied the power to impose penalties or fines as a means of inducing an unwilling and litigious employer to make payment of wages promptly and at short intervals when the public welfare demands and requires it.

The Constitutions of Arkansas and Missouri prohibit imprisonment for debt. In each of these states the courts have sustained statutes making it a misdemeanor for an employer to fail to pay wages of an employee at stated intervals. It is true that the particular question was not urged in those cases, and it was only passed upon incidentally. *Arkansas Stave Co.* v. *State,* 94 Ark. 27, 140 Am. St. Rep. 103, 27 L. R. A. (N. S.) 255, 125 S. W. 1001; *State* v. *Missouri Pa-*

*cific Ry. Co.*, 242 Mo. 339, 147 S. W. 118. In the Missouri case the court said:

"Under the rules announced in the foregoing cases, if the General Assembly may, on account of the unequal situation of laborers and their corporate employers, fix the time for paying wages, it may with equal propriety prescribe fines and penalties to compel the payment of such wages."

The appellant is not in a position to challenge the constitutionality of the law on the ground of its application to individuals; that question can only be raised by parties whose rights are involved or affected thereby. *Gherna* v. *State*, 16 Ariz. 344, Ann. Cas. 1916D, 94, 146 Pac. 494.

It is next objected that the statute violates section 25, article 2, of our Constitution, and section 10, article 1, of the Constitution of the United States, prohibiting the passage of laws impairing the obligation of contracts. It is asserted that appellant's charter to do business in Arizona antedates this law, and that at the time it was licensed to do business in this jurisdiction the right to contract with its employees as to the time of payment of wages was unrestricted, and that this right continues, notwithstanding the statute involved. As a matter of fact section 705 of the Penal Code of 1913 was on our statutes long anterior to appellant's entrance into the state. It is found in the Penal Code of 1901 as section 616. Section 706 of the present Penal Code differs from section 617 of the Penal Code of 1901 principally in that it makes the punishment a fine between a minimum and maximum sum and applies to a much more limited class. So far as the appellant is concerned, the law is unchanged. The point, therefore, that appellant makes, that there was no provision in the organic laws of the territory authorizing amendments, alterations, or changes of the charter of corporations at the time it entered this field, is without merit.

Many of the courts base the power of the legislature to enact legislation of the character we have here upon the police power, and we are persuaded that that must be one of its sources. In *Erie R. R. Co.* v. *Williams*, 233 U. S. 685, 51 L. R. A. (N. S.) 1097, 34 Sup. Ct. Rep. 761, 58 L. Ed. 1155, Justice McKENNA based it both upon reserved power of the state and its police power. In this case it is also held that a statute of New York requiring certain employers to pay wages bimonthly was not a deprivation of property or of lib-

erty without due process of law, and therefore not in conflict with the Fourteenth Amendment to the Constitution of the United States.

Appellant makes the further contention that this law violates the equal protection clause of the Fourteenth Amendment, in that it does not include other employers of. labor engaged in the same kind of work or employment under the same conditions and circumstances as those employers against which it is directed. In other words, he objects to the classification as unreasonable and arbitrary. Included within the terms of the law are corporations only; no other employers of labor are affected by it, even though engaged in the same occupation or business. Whether this classification of corporations, based solely upon their artificial character, is permissible, is the question. If it is permissible, then, of course, the law operates upon all alike within the class, and will not deny the equal protection of the law to the appellant, as every other corporation in the state is charged with the same duty and is subject to the same penalties. In *Arkansas Stave Co.* v. *State, supra,* wherein the same question was involved, the court said:

"Nor does this act deny to the defendant the equal protection of the law. It applies to all corporations. Within the sphere of its operation all artificial persons are treated alike under like circumstances and conditions. Because the act only applies to corporations, and not to natural persons, it does not contravene the equal protection clause of the federal Constitution. Nearly all legislation is special, either in the objects sought to be attained or in its application to classes; and the general rule is that legislation does not infringe the constitutional right of equal protection where all persons whether natural or artificial, of such class, are treated alike under like circumstances and conditions. In the case of *Missouri P. R. Co.* v. *Mackey,* 127 U. S. 205, 32 L. Ed. 107, 8 Sup. Ct. 1161, Mr. Justice FIELD, speaking of this provision of the federal Constitution, says: 'Such legislation does not infringe upon the clause of the Fourteenth Amendment, requiring equal protection of the laws, because it is special in its character. . . . And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under

its influence are treated alike under the same conditions.'
*Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 43 L. Ed. 552, 19
Sup. Ct. Rep. 281; *St. Louis & S. F. R. Co.* v. *Mathews,* 165
U. S. 20, 41 L. Ed. 618, 17 Sup. Ct. Rep. 243; *McLean* v.
*Arkansas,* 211 U. S. 539, 53 L. Ed. 315, 29 Sup. Ct. Rep. 206.''

In the case of *State* v. *Missouri Pacific R. R. Co., supra,*
every conceivable objection was urged against the constitu-
tionality of the law, which is practically the same as ours.
All of these objections were taken up and fully discussed by
the court and held to be without merit. We do not deem it
necessary to set forth here the reasons given by the court in
support of its decision, but suffice it to say that they seem to
us to be in line with the general trend of the more recent
development and expansion of the law under what is known
as the police power of the state. In *St. Louis, I. M. & S. Ry.
Co.* v *Paul,* 173 U. S. 404, 43 L. Ed. 746, 19 Sup. Ct. Rep.
419, a law of the state of Arkansas, based on a classification
of artificial persons, required the payment of wages upon the
discharge of an employee, and provided that, if the same be
not paid on such day, as a penalty for nonpayment, his wages
should continue at the same rate until paid, was held con-
stitutional.

It is next objected that section 705 of the Penal Code,
*supra,* is null and void, by reason of being too vague, indefi-
nite, and uncertain as a penal statute, in failing to prescribe
a fixed and definite standard of conduct for appellant or
others similarly situated. This section provides that, when-
ever an employee quits the service or is discharged, he shall
be paid the wages due him in lawful money, or by check of
even date on a bank, and said wages shall be paid at once.
The uncertainty and ambiguity preferred against this statute
is directed to the expression "at once." It is said that "at
once," as here used, does not mean instantaneously, but within
a reasonable time. Appellant cites a number of civil cases
construing the expression as it contends. Should the expres-
sion be construed as meaning that the employer shall be
allowed a reasonable time within which to pay the wages after
the employee quits his service, it is apparent that the rule of
conduct is as variable as the circumstances in any given case
might be. What would be a reasonable time in one instance
might be an unreasonable time in another, depending upon
the circumstances of each case. A jury would have no defi-

nite, certain rule by which to determine whether the law had been violated, and as a consequence, what one jury might believe to be a reasonable time another would believe to be unreasonable. It would be left with the jury to correlate the facts constituting the offense in each case; the employer would not know in advance what acts of his would make out a crime, and in every case when an employee should quit or be discharged his conduct, instead of being guided by a definite, certain standard, would be left to the idiosyncrasies of a jury. We do not think that such a construction should be given to the expression ''at once'': First, because to do so would render the law void for uncertainty; and, second, because from the context in which it is used, it evidently would defeat the intention of the legislature. We are persuaded that the legislature intended that the expression ''at once'' should be practically literally construed.

Sections 704, 705, and 706 of the Penal Code have to do with the same subject matter, to wit, the payment of wages by an employer to an employee. Section 704 provides for a semi-monthly pay day, or, more accurately, that pay days shall not be more than sixteen days apart, to be designated and posted by the employer, except that ''wages for not more than five days' labor due any employee remaining in the service thereof'' may be withheld. In the case, however, of employees who quit the service or are discharged therefrom, the wages are required to be paid ''at once''; there is to be no delay, no postponement. It will be noticed that the statute requires the employer to pay the wages of an employee ''at once'' in two instances:

First, when he discharges the employee; that is, when an employer, by his act, severs the relationship. In such case he knows what he is doing and when he is going to do it. Whatever be the occasion of discharge, whether a lack of work or the fault of the employee, what is due him at the time should be of right paid. Usually it is an insignificant sum to the employer, but vitally needed by the employee. It is not unreasonable, therefore, to require that an employer should at the time of the discharge be required to pay whatever wages are due an employee. So construed, it is definite and certain, and in accord with the letter and spirit of the statute, and establishes a uniform standard of conduct that may be easily and conveniently observed by the employer.

Second, the statute requires an employer, when an employee quits the service, to pay him "at once." Here the acting party is the employee, and it is argued that he may quit at such a time and place as to make it impossible for the employer to have notice of his quitting, so as to conform with the requirements of the law. We think, when used in connection with the word "discharge," as explained above, the word "quits" connotes notice to the employer by the employee at the usual place of payment and during the business hours of the day. It does not mean that the payment shall be *instanter*, but it does mean that the time of payment shall relate to and be connected with the notice and demand, and with as little delay as may be occasioned by active and continuous effort in good faith upon the part of the employer to ascertain and pay the wages. An arbitrary refusal to pay after notice and demand would constitute the offense. Intentional delays to stated "pay days" are impliedly, if not in direct terms, forbidden. "Pay days" are for those who have not been discharged or quit.

In *Arkansas Stave Co.* v. *State, supra,* the court had under consideration the following act:

"Section 1. All corporations doing business in this state who shall employ any salesmen, mechanics, laborers or other servants for the transaction of their business shall pay the wages of such employees semi-monthly.

"Sec. 2. Any corporation that shall through its president, or otherwise, violate section 1 of this act, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum not less than $50 nor more than $500 for each offense."

The Stave Company was indicted for failing and refusing to pay the wages of an employee semi-monthly, as required by the statute. It defended by challenging the constitutionality of the law. The court held the law to be a valid exercise of the police power, and, in passing upon the elements of the crime defined, said:

"The act provides that the corporation should pay its employees semi-monthly their wages, and a reasonable construction of such provision would require that the corporation should have the opportunity to make such payment. If the employee did not desire, and did refuse to accept, the payment, then it would be requiring an unreasonable thing to be

done to make the corporation pay in such event; and so, too, if it should be required to pay in every event.''

Literally or strictly construed, under the Arkansas statute, the offense is defined as a failure to pay the employee his wages semi-monthly. The statute does not, in terms, require the employee to demand of the employer to pay, or require a state of facts showing the futility of demand, yet without it no offense is made out, for it is possible that the employee may refuse payment, or cannot be found, or is incapacitated. A demand and refusal to pay are essential elements of the crime. So, under our law, notice to the employer by the employee that he has quit, a demand for the payment of his wages, and a refusal to pay are essential elements to the offense defined. There cannot be a failure or refusal to pay until notice is given by the employee to the employer that he has quit and a demand made for his wages.

The admitted facts of this case are that one T. P. Caughlin, an employee of the appellant, quit work on the twenty-third day of September, 1915, at which time he notified the appellant that he had quit. The wages due him at that time was the sum of $22.07, the payment of which was then demanded. The appellant failed and refused to pay the wages, and did not pay them until on or about October 5th, appellant's regular pay day. No excuse for failing to pay the wages due Caughlin was offered, other than that the law was invalid.

We think clearly the prosecution made out a case under the law, and that the judgment of conviction should be affirmed; and it is accordingly ordered.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

---

On validity and effect of statute regulating time of payment of wages, see notes in 21 L. R. A. 797; 28 L. R. A. 344; 15 L. R. A. (N. S.) 350; 27 L. R. A. (N. S.) 255; 35 L. R. A. (N. S.) 549; 51 L. R. A. (N. S.) 1097.