(No. 14592.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*provision of Practice act as to submitting propositions of law does not apply to criminal cases.* The provision of section 61 of the Practice act that in a trial by the court either party may submit to the court written propositions to be held as law in the case or refused or modified, in accordance with the court's view of the law, does not apply to trials in criminal cases.

2. CONSTITUTIONAL LAW—*when law violates provision for due process of law.* Any law that deprives a person of his property or compels him to deliver to any person his property without justification deprives him of property without due process of law.

3. SAME—*provision of Ballot law giving employees two hours' time with pay for purpose of voting is invalid.* The provisions of section 25 of the Ballot law (Hurd's Stat. 1917, p. 1341,) giving an employee the right to absent himself from work for two hours on election day so he may have a chance to vote is valid, but the further provision that requires the employer to give the employee

full pay for two hours' time violates both the Federal and State constitutions.

4. SAME—*statute interfering with right to contract for labor is unconstitutional.* The State has no right to interfere in a private employment and stipulate the terms of the services to be rendered, as liberty includes the right to make contracts as well with reference to the amount and duration of labor to be performed as concerning any other lawful matter, and any attempt to unreasonably abridge this right is opposed to the constitution.

5. ELECTIONS—*right to vote does not include right to be paid for time required in voting.* The right to vote is one of the privileges guaranteed to every citizen who possesses the requisite qualifications, but it is not the constitutional right of any citizen to be paid for the time consumed in exercising the right to vote.

6. POLICE POWER—*constitutional guaranties cannot be disregarded in exercising police power.* No exercise of the police power can disregard the demands of natural justice or the constitutional guaranties in respect to the taking of private property, due process of law and equal protection of the laws.

WRIT OF ERROR to the County Court of Cook county; the Hon. F. S. RIGHEIMER, Judge, presiding.

H. H. FIELD, C. S. JEFFERSON, and O. W. DYNES, (BURTON HANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On September 26, 1921, an information was filed in the county court of Cook county against plaintiff in error, the Chicago, Milwaukee and St. Paul Railway Company, charging it with violating section 25 of an act entitled "An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot," approved June 22,

1891, in force July 1, 1891. (Hurd's Stat. 1917, p. 1341.) The information charged that on June 6, 1921, John E. Turney, an employee of the plaintiff in error, was entitled to vote at an election held in Chicago; that Turney did prior to the day of the election make application to plaintiff in error for leave to absent himself from his employment for a period of two hours between the opening and the closing of the polls in order that he might vote; that on election day he did absent himself from his employment to vote at said election, and plaintiff in error willfully and unlawfully penalized him and deducted from his salary the amount of his earnings for the two hours thus absent from his work, etc. The court overruled plaintiff in error's motion in writing to quash the information, which motion contains sixteen points. The substance of a number of the points is that said section of the statute is in conflict with the State and Federal constitutions and is void. The court overruled the motion to quash and declined to pass on a number of propositions of law submitted for decision. Plaintiff in error then filed a plea of not guilty, and upon a hearing before the court, a jury being properly waived, it was found guilty as charged and fined $100 and costs. A writ of error has been sued out of this court to review that judgment.

The facts established and not controverted are the following: Plaintiff in error is a corporation organized under the laws of Wisconsin and doing business as a common carrier of interstate and intrastate commerce, with shops and offices at Chicago. John E. Turney on June 6, 1921, a regular election day within the contemplation of the statute, together with others of his craft, was employed as a machinist in plaintiff in error's shops aforesaid. Under his contract with the plaintiff in error he was paid by the hour, at eighty-five cents per hour. He was not working to exceed eight hours a day and began his daily work at eight o'clock in the forenoon. For overtime he was to be paid on the basis of time and a half. On June 3 or 4 he asked his supe-

rior to be permitted to absent himself from work for two hours on election day, which request was granted. He did absent himself from his employment on said day from eight to ten o'clock A. M. in accordance with permission granted and voted at the election. He returned to work at ten o'clock A. M. and worked six hours that day, was paid for the six hours but was not paid for the two hours he was absent from his work. He asked plaintiff in error to pay him the regular hourly rate of wages for the two hours he was absent, and this request was refused. He lived within a block of the polling place of his precinct and could have gotten from the polling place to his working place in forty-five minutes. The polls were open that day from six in the morning until four in the afternoon. Plaintiff in error also offered, but was not permitted, to prove that it had in its employ 2046 men, and that part of them were paid on piecework basis, and that if Turney was entitled to time off to vote, with full pay, all of them would be entitled to time off to vote, with pay, if the statute is valid, but the court refused to admit the evidence.

The section of the statute under which this information was framed, as amended, passed and approved in 1908, is found in Hurd's Statutes of 1917, on page 1350, and is in the following language:

"Sec. 25. Any person entitled to vote at a general or special election or at any election at which propositions are submitted to a popular vote in this State, shall, on the day of such election, be entitled to absent himself from any services or employment in which he is then engaged or employed, for a period of two hours between the time of opening and closing the polls; and such voter shall not because of so absenting himself be liable to any penalty, nor shall any deduction be made on account of such absence from his usual salary or wages: *Provided, however,* that application for such leave of absence shall be made prior to the day of election. The employer may specify the hours during

which said employee may absent himself as aforesaid. Any person or corporation who shall refuse to an employee the privilege hereby conferred, or shall subject an employee to a penalty or deduction of wages because of the exercise of such privilege, or who shall directly or indirectly violate the provisions of this section, shall be deemed guilty of a misdemeanor and be fined in any sum not less than five dollars ($5) nor more than one hundred dollars ($100)."

The evidence offered by plaintiff in error and rejected by the court to the effect that it employed 2046 men, etc., was not really material to the decision of any issue in this case and the court did not err in rejecting it. That evidence, however, does show the importance of this question to corporations like plaintiff in error that have to conduct the business for which they are incorporated every day in the week in some of its branches. The total cost to plaintiff in error, under this section of the statute, on any election day would no doubt not be less than $3500 if all of its employees were to vote on that day and were to receive pay for two hours' work while voting.

The trial court properly ruled that the submission of propositions of law in a criminal case is not proper practice. The provisions of section 61 of the Practice act (Hurd's Stat. 1921, p. 2464,) that in a trial by the court either party may, within such time as the court may require, submit to the court written propositions to be held as law in the decision of the case, upon which the court shall write "refused" or "held," as he shall be of opinion is the law, or modify the same, to which either party may except as to other opinions of the court, do not apply to trials in criminal cases. (*Jacobs* v. *People,* 218 Ill. 500; *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 214 id. 421; *People* v. *Johnson,* 288 id. 442.) The amendment to that section in the following words, "in any case so tried the court shall find specially upon any material question or questions of fact, which shall be submitted in writing by

either party before the commencement of the argument," was not intended to apply to or change the rule of law respecting propositions of law provided for in the first part of the section. It simply provides for a special finding of facts by the court and how such finding may be compelled.

Under our State and Federal constitutions every person is guaranteed the equal protection of the law in the right to own, use and enjoy property. These constitutions also distinctly provide that the property of no person shall be taken unless compensation be given to him for such invasion of his rights. Any law that deprives any person of his property or compels him to deliver to any person his property without justification deprives him of property without due process of law. The section of the statute above quoted violates the provision of our constitution aforesaid by providing, in substance, that no deduction from the usual salary or wages of the employee shall be made by his employer on account of such absence, and by subjecting the employer to the penalty aforesaid in case he makes such deduction from the employee's wages. There is no justification or sound reason to be found in the law for making such a discrimination between an employer of labor and other persons who do not employ labor, and it likewise is a clear violation of the due process clause of the fourteenth amendment to the Federal constitution. The legislative branches of this government and of this State have gone to the utmost limits in legislation to protect the lives, health and safety of employees, and the courts of this country, including this court, have also gone far in sustaining those laws wherever and whenever it reasonably appeared that such laws were necessary or beneficial in protecting the lives, health and safety of such employees while at work, without regard to the question of cost to employers. The same courts have gone equally far in sustaining laws that guarantee the equal and untrammeled right of every citizen to exercise his right of franchise and to cast his vote at every election as he pleases and for whom

he pleases and without hindrance or undue influence of any kind by any person, but so far as we know no court has ever decided in any case that it was the right of any citizen, under any circumstance, to be paid for the privilege of exercising his right to vote or to be paid by his employer for the time employed by him in the exercise of his right to vote. The statute in this case in substance requires employers of laborers to pay them for two hours' time while exercising their right to vote, and thus deprives such employers of their money and property without due process of law, and thereby denies them the equal protection of the laws, in violation of both the Federal and State constitutions.

Section 1 of article 2 of our constitution provides that all men are by nature free and independent and have certain inherent and inalienable rights; that among these are life, liberty and the pursuit of happiness; that to secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed. In *Ritchie* v. *People,* 155 Ill. 98, it was held that liberty includes the right to make contracts, as well with reference to the amount and duration of labor to be performed as concerning any other lawful matter, and that any attempt to unreasonably abridge this right is opposed to the constitution. Plaintiff in error employed Turney to perform labor for it in its shops, and it agreed to pay him eighty-five cents per hour for his labor, and time and one-half for overtime. It did not agree by its contract to pay him for two hours' time while he was engaged in his lawful right of attending the election and casting his vote. The provisions of said statute that gave him the right to absent himself for two hours on election day and to cast his vote, and which required his employer, plaintiff in error, to give him this opportunity of attending the election for such purpose, are wholesome provisions of the statute and are valid and binding, but the provision of the statute that requires the employer to pay him at the rate of eighty-five cents per

hour for the time employed in attending the election and casting his vote,—or, speaking more accurately, the provision requiring the employer to pay him for two hours' time at such rate for exercising such privilege,—is invalid, because it is an unreasonable abridgment of the right to make contracts. The legislature had just as much right to require employers to pay their employees for the time they necessarily would be compelled to use in looking after any sick member or members of their family as it had to pass the provision in question. Other striking examples of void legislation of the character in question might be stated and in which it would appear that the employee would be engaged in a matter or pursuit equally as commendable and as essential to his own personal welfare, but further comment is unnecessary, as it is entirely clear that the provision in question is an unreasonable abridgment of the right to contract and therefore void.

It is claimed by the People that the provision in question is sustainable under what is known as the police power of the State, commonly defined as that inherent plenary power in the State to prohibit all things hurtful to the comfort, welfare and safety of society. The relation of employer and employee is purely voluntary, resting upon the contract of the parties. Every man has a natural right to hire his services to anyone he pleases or refrain from such hiring, and it is equally the right of everyone to determine whose services he will hire. The State has no right to interfere in a private employment and stipulate the terms of the services to be rendered. (Tiedeman on Limitation of Police Power, secs. 176, 178.) It is true that the State does have the right, under its police powers, to pass laws that tend to promote the health, safety or morals of such employees as Turney, because of the fact that such laws would tend to promote the health, comfort, safety and welfare of society. The act in question, as contended by plaintiff in error, does not in any way, so far as we are able to see, tend to pro-

mote the health, safety or morals of such employees. The provisions in question are not adapted to the object for which the law was enacted and cannot be said to secure public comfort, welfare, safety or public morals. There is no contention, and there can be none made with any reasonable showing, that the provision in question tends to promote the safety or health of any employee. It has always been the policy of our laws to condemn the idea of any voter being paid for exercising the privilege of an elector or voter. The right to vote is simply one of the privileges guaranteed to every citizen of this country who possesses the requisite qualifications. It is not only a right but should be regarded as a duty of the citizen where he is reasonably able physically to perform that duty. It is not the constitutional right of any citizen to be paid for the exercise of his right to vote, and the holding of the provision of the statute void does not violate the right of any citizen, including those who are employed to labor. This provision of the statute is not sustainable under the police power of the State and it does violate the constitutional provisions aforesaid and therefore must be declared void. Besides, "no exercise of the police power can disregard the constitutional guaranties in respect to the taking of private property, due process and equal protection" of the laws, and it should not "override the demands of natural justice." *Chicago, Burlington and Quincy Railway Co. v. People,* 26 Sup. Ct. 341; *City of Belleville v. St. Clair County Turnpike Co.* 234 Ill. 428.

Other points are raised by the parties but it will not be necessary to consider them, as the decision on the points already considered entirely disposes of the case.

The judgment of the county court is reversed.

*Judgment reversed.*