# STATE v. INTERNATIONAL HARVESTER COMPANY.[1, 2]

March 5, 1954.

No. 36,143.

---

[1]Reported in 63 N. W. (2d) 547.
[2]Appeal dismissed, 348 U. S. 853, 75 S. Ct. 78, 99 L. ed. ——.

*Fowler, Youngquist, Furber, Taney & Johnson,* for appellant.

*J. A. A. Burnquist,* Attorney General, *James F. Lynch,* County Attorney, and *John P. Frank* and *William F. Desmond,* Assistant County Attorneys, for respondent.

*Francis X. Helgesen,* for United Automobile, Aircraft, and Agricultural Implement Workers of America, C. I. O., *amicus curiae.*

NELSON, JUSTICE.

This case arose upon a verified complaint filed in the municipal court of the city of St. Paul, signed by Francis Davidson, president of Local Union No. 763, International Union, United Automobile, Aircraft, and Agricultural Implement Workers of America. The complaint charged that the defendant International Harvester Company unlawfully deducted wages of one of its employees for absenting himself from work during the forenoon of election day, November 4, 1952, contrary to and in violation of M. S. A. 206.21 and 210.11. On that day the polls in the city of St. Paul were open from 7 a. m. to 8 p. m. The defendant company employed its workers in two daily shifts; the first between 8 a. m. and 4:30 p. m., and the second shift between 4:30 p. m. and 12:30 a. m. Each of its employees was hired pursuant to a union contract dated January 2, 1951, which contained the following provision:

"Article XVIII

"Voting

"Employees shall be allowed the necessary time off without pay to vote in any Federal, State or Municipal election."

Thomas D. Kennedy, the employee here involved, was a regular employee of a parts depot operated by the defendant company at 767 Eustis street in the city of St. Paul. Kennedy resided at 496 Dayton avenue in said city, and the polling place for his voting district was at 405 Selby avenue. On election day Kennedy absented

himself from work for two hours in the forenoon, while on his regular shift, for the purpose of voting, and he performed no services for his employer during this period. The defendant company deducted from his wages the sum of $3.50 for that day, such deduction representing two hours of absence from work at $1.75 per hour.

Prior to the election date, Mr. Davidson, who at the time was employed by defendant company and was president of Local 763 of the union which had entered into the employer-employee contract with defendant company, met with Walter Swales, industrial relations advisor at the parts depot. At that meeting Mr. Swales was asked whether the employees would be given time off to vote as provided by state law, and he informed Mr. Davidson that word had been received from the home office that the employees would not be allowed time off to vote with pay. Davidson admitted at the trial that with this background he had made the present complaint. A letter from the Chicago office of the defendant company, dated October 29, 1952, signed by Ivan L. Willis, vice president, revealed that the company's policy as to absence for voting purposes was to allow any employee the necessary time off, but nonsalaried employees were not to be paid for any lost time and salaried employees would receive their full salaries, free from deductions, only if advance notice was given to the supervisor of his intention to vote during working hours and if he could not vote without loss of regular working hours.

The matter was submitted to the trial court pursuant to written stipulation of facts and oral testimony taken during the trial. No controversy exists here as to the facts, the state being in agreement that all the facts as stated by the appellant in its brief are correct. The defendant company was adjudged guilty as charged in the complaint and ordered to pay a fine of $100, and it appeals from the judgment.

The following statutes of the state of Minnesota are involved:

"206.21 **EMPLOYEES MAY VOTE WITHOUT LOSS OF TIME.** Every employee entitled to vote at an election shall be permitted to absent himself from his work for that purpose during the forenoon

of each election day, without a penalty or deduction from salary or wages on account of such absence."

"210.11  **REFUSING EMPLOYEE ELECTION PRIVILEGE.** Every person who as principal or as an official or agent of any other person, shall directly or indirectly refuse, abridge, or in any manner interfere with any of the election privileges or immunities of any employee of himself or his principal, shall be guilty of a misdemeanor."

"610.19  **PUNISHMENT OF MISDEMEANORS WHEN NOT FIXED BY STATUTE.** Whoever is convicted of a misdemeanor for which no punishment is prescribed by any statute in force at the time of conviction and sentence shall be punished by imprisonment in the county jail for not more than three months, or by a fine of not more than $100."

The main issues presented are as follows:

Whether defendant company is in a position to attack the constitutionality of § 206.21, in conjunction with §§ 210.11 and 610.19, and, if so, whether §§ 206.21 and 210.11, applied in conjunction with § 610.19, are repugnant to the constitutional prohibition against imprisonment for debt, Minn. Const. art. 1, § 12.

Whether the statutes in question are so discriminatory, unreasonable, and unequal in their application to employers of the same class to which defendant belongs as to constitute an unlawful exercise of the police power and a violation of the due process, equal protection, and impairment of contract obligations of Minn. Const. art. 1, §§ 2, 7, 8, 11, and 13, and U. S. Const. art I, § 10, and U. S. Const. Amend. XIV, § 1.

Whether the provisions in the employment contract to the effect that employees were entitled to time off to vote, but without pay, constitute a valid waiver of the prohibition against a penalty or deduction from salary or wages found in § 206.21.

■ The latest decisions, including Day-Brite Lighting, Inc. v. Missouri, 342 U. S. 421, 72 S. Ct. 405, 96 L. ed. 469, decided by the Supreme Court of the United States March 3, 1952, in considering the validity of statutes granting time off to vote either with or

without pay, have stated that the choice of the means of attaining the desired objective is to be left to legislative power and discretion. State v. Day-Brite Lighting, Inc. 362 Mo. 299, 240 S. W. (2d) 886; People v. Ford Motor Co. 271 App. Div. 141, 63 N. Y. S. (2d) 697; Ballarini v. Schlage Lock Co. 100 Cal. App. (2d) Supp. 859, 226 P. (2d) 771.[3]

The present statutes which we are considering had their beginning in L. 1891, c. 4, § 127, and in L. 1893, c. 4, § 109, each enactment entitled "An act to regulate elections." L. 1893 contained a more detailed treatment of the subject and referred to "Any person or corporation, or officer or member thereof, who shall refuse to an employe the privilege hereby conferred, * * *."

The coded §§ 206.21 and 210.11 are the same as L. 1939, c. 345, part 6, c. 8, § 21, and part 9, c. 1, § 11, respectively. L. 1939, c. 345, substituted the words "every person" for "any person or corporation." There has been no change in these sections since L. 1939, c. 345, entitled "An act to regulate elections." The general provisions of this act are now coded as M. S. A. chapters 200 to 212, inclusive, and § 206.21 is to be found in the chapter on "conduct of elections and manner of voting," and § 210.11 in the chapter on "penal provisions" under the general head of "elections." The general designation "every person" includes corporations in the present statutory provisions involved here. See, § 645.44, subd. 7; 5 Dunnell, Dig. & Supp. Person, p. 251; State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244.

The defendant company contends that, since the contract of employment entered into in the year 1951 between it and its employees provided time off to vote *without pay,* there was in effect a waiver of the pay-while-voting statutes of Minnesota and that therefore the penal section has not been offended. These statutes had in effect been on the statute books of this state for approximately 60 years, and it must be presumed that this contract was made in contempla-

---

[3]For a review of legislation and cases in this field, see 47 Col. L. Rev. 135; Illinois Cent. R. Co. v. Commonwealth, 305 Ky. 632, 204 S. W. (2d) 973; People v. C. M. & St. P. Ry. Co. 306 Ill. 486, 138 N. E. 155, 28 A. L. R. 610; but cf. Zelney v. Murphy, 387 Ill. 492, 56 N. E. (2d) 754.

tion thereof. It is well established that freedom of contract is a qualified right and not an absolute right, and this qualification on liberty of freedom to contract has long been recognized. The obligations of this contract cannot properly be said to be impaired by statutes in force when the contract was made. There appears to be ample precedent for the proposition that in the public interest the legislature can interfere with freedom of contract in regard to agreements between employers and employees without violating due process requirements and that regulations such as we are considering in the instant case neither interfere with freedom of contract nor violate due process under either the federal or state constitutions. The concept of freedom of contract, which has been dealt with by the courts as an aspect of due process, is to be distinguished from the contract clause, U. S. Const. art. I, § 10, which prohibits the impairment of the obligation of contract. See, 47 Col. L. Rev. 138.

■ Whether these regulations come within the police power in the legislative field is a debatable issue, and therefore the wisdom of the regulations is not for the courts unless they are found to be so discriminatory, unreasonable, and oppressive that it must be determined by the courts as a question of law. Reluctance of courts of recent date to substitute their judgment in the economic realm points the way to the constitutionality of pay-while-voting statutes.[4] We see no constitutional violation in these respects, and so hold.[5] Neither do we find these statutes to be so unreasonable and unequal

[4]Helvering v. Davis, 301 U. S. 619, 57 S. Ct. 904, 81 L. ed. 1307, 109 A. L. R. 1319; West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. ed. 703; Day-Brite Lighting, Inc. v. Missouri, *supra*.

[5]Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469; Olsen v. Nebraska, 313 U. S. 236, 61 S. Ct. 862, 85 L. ed. 1305, 133 A. L. R. 1500; Lincoln Union v. Northwestern Co. 335 U. S. 525, 69 S. Ct. 251, 93 L. ed. 212, 6 A. L. R. (2d) 473; California Auto. Assn. v. Maloney, 341 U. S. 105, 71 S. Ct. 601, 95 L. ed. 788; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062; City of St. Paul v. Fielding & Shepley, Inc. 155 Minn. 471, 194 N. W. 18; Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481.

in their application to employers of the class to which defendant, International Harvester Company, belongs as to constitute unlawful exercise of the police power and a violation of the due process and equality provisions of the state and federal constitutions.

The decisions of this court have adopted and followed the rule that unless a law is unconstitutional beyond a reasonable doubt it must be sustained. The power of the courts in this regard is to be exercised only when absolutely necessary and then with extreme caution. A law is not to be declared unconstitutional by the courts unless palpably so; and where a statute has been acquiesced in and acted upon in important matters for many years, a court will not declare it unconstitutional if it can be sustained by any reasonable construction. See, 6 Dunnell, Dig. & Supp. § 8931, and cases cited. Neither is it for the courts to determine the wisdom or expediency of legislative enactments within the realm of police legislation. The judicial function is to determine whether the ostensible protective purpose of the purported police regulation relates to the public welfare and not merely to a private interest and whether the remedy is designed to accomplish that purpose without going beyond the reasonable demands of the occasion so as to arbitrarily and unnecessarily interfere with personal and property rights. 3 Dunnell, Dig. (3 ed.) § 1605; West Coast Hotel Co. v. Parrish, *supra.*

The contention that a discrimination between an employer of labor and persons who do not employ labor constitutes a denial of equal protection lacks force, as the courts have frequently upheld statutes which apply only to specified categories of employees.[6] The defendant company likewise contends that making the pay-

---

[6]Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245; Booth v. Indiana, 237 U. S. 391, 35 S. Ct. 617, 59 L. ed. 1011; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 35 S. Ct. 167, 59 L. ed. 364; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. ed. 315; St. Louis Consol. Coal Co. v. Illinois, 185 U. S. 203, 22 S. Ct. 616, 46 L. ed. 872; W. H. H. Chamberlin, Inc. v. Andrews, 271 N. Y. 1, 2 N. E. (2d) 22, 106 A. L. R. 1519, affirmed without opinion, 299 U. S. 515, 57 S. Ct. 122, 81 L. ed. 380, rehearing denied, 301 U. S. 714, 57 S. Ct. 926, 81 L. ed. 1365.

while-you-vote statutes apply only to forenoon workers on election day is discriminatory and unreasonable and offends the due process and equality provisions of the federal and state constitutions. It argues that, if such statutes are to be upheld as a valid exercise of the police power, their real purpose should be to induce *all* employed workers entitled to vote to do so—not merely forenoon workers. Of course, the legislative judgment was exercised here when these statutes were adopted, and the members of the legislature no doubt took the view that those who did not work forenoons would have ample opportunity to vote then; that those on day-time shifts would be sufficiently aided in freely exercising the voting franchise by limiting time off for voting without penalty or pay deduction to the forenoon of election day; and that no greater burden need be placed upon the employer than this to protect the right of suffrage and guard and promote the general welfare.

Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application is not prohibited by either the state or federal constitutions if, within the sphere of its operation, it affects alike all persons similarly situated and the classification is not arbitrary. The grounds for discrimination between persons similarly situated may be slight. The fact that a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded on a reasonable distinction or if any reasonable state of facts can be conceived to sustain it. The question is primarily for the legislature, and unless a discrimination is manifestly arbitrary and unreasonable, it will be sustained. The legislature may strike at an evil where it is most felt or where it is most practical to deal with it. The courts are not at liberty to speculate upon the considerations which motivate the legislature or to declare void legislative classification where there is some reason therefor, even though the courts may not hold such reasons in the same high regard as did the legislature.[7] The only practical limitation on the power

[7] 3 Dunnell, Dig. (3 ed.) § 1669; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598; State v. Pehrson, 205 Minn.

of the legislature to make any classification is that the classification shall be based upon some reason suggested by necessity or by some difference in the situation and circumstances of the subjects classified suggesting the necessity of different legislation with respect to them. State ex rel. Douglas v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297; Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; Burns v. City of St. Paul, 210 Minn. 217, 297 N. W. 638; Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378.

Mr. Justice Douglas speaking for the United States Supreme Court in Day-Brite Lighting, Inc. v. Missouri, *supra*, referring to a Missouri pay-while-you-vote statute similar to ours, said that the state of Missouri by this legislation had sought to safeguard the right of suffrage by taking from employers the incentive and power to use their leverage over employees to influence the vote; that the police power is not confined to any narrow category for it extends to all the great public needs; that the protection of the right of suffrage under our scheme of things is basic and fundamental; and that the only semblance of substance in the constitutional objection to the Missouri law was that the employer must pay wages for a period in which the employee performs no service. The court disposed of the latter objection by saying that, while many forms of regulation reduce the net return of the enterprise, yet that fact does not give rise to a constitutional infirmity, for most regulations of business necessarily impose financial burdens on the enterprise for which no compensation is made and that such burdens are part of the cost of our civilization. It was held that the Missouri law under consideration had no such infirmity for it was designed to eliminate any penalty for exercising the right of suffrage and to remove a practical obstruction to getting out the vote. The court

573, 287 N. W. 313, 123 A. L. R. 1045; Eldred v. Div. of Employment and Security, 209 Minn. 58, 295 N. W. 412; Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327; General Mills, Inc. v. Div. of Employment and Security, 224 Minn. 306, 28 N. W. (2d) 847; State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 280 N. W. 9; Thomas v. Housing & Redevelopment Authority, 234 Minn. 221, 48 N. W. (2d) 175.

then stated that the public welfare is a broad and inclusive concept, that the moral, social, economic, and physical well-being of the community is one part of it and the political well-being another, and that the police power which is adequate to fix the financial burden for one is adequate for the other. In effect it was held that the need for the classification provided for by the Missouri statute was a matter for legislative judgment and the classification did not amount to a denial of equal protection of the laws, citing American Federation of Labor v. American Sash & Door Co. 335 U. S. 538, 69 S. Ct. 258, 93 L. ed. 222, 6 A. L. R. (2d) 481.

■ The defendant company also contends that these pay-while-you-vote statutes conflict with provisions of the National Labor Relations Act as amended by the Taft-Hartley Labor Act (61 Stat. 142, 29 USCA. § 158[b][6]). It must be clear that the purpose of the Taft-Hartley act is not to control the rights of the several states against either management or labor as to any matters that concern us here. Its purpose is set forth in 61 Stat. 136, 29 USCA, § 141(b), which reads as follows:

"It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, * * *."

We are unable to see where any of the provisions of this act in any way affect the election laws of the state of Minnesota nor the exercise of the police power of the state in connection therewith regulating the same, and we so hold.

We see no conflict between the provisions of the election laws of the state under consideration here and the other provisions of our general election laws contained in chapters 200 to 212, inclusive, nor any conflict between §§ 206.21, 210.11, and 610.19 providing the penalty for misdemeanors where a penalty is not otherwise provided in the act itself. These may properly be construed and applied together in the instant case without violating any of the provisions of the constitution of the state of Minnesota or the constitution of the United States of America.

"* * * The numbering of sections in statutes is a purely artificial and unessential arrangement resorted to for purposes of convenience only, and can never be allowed to hinder a correct construction of the entire act." Estate of Bull, 153 Cal. 715, 717, 96 P. 366.

■ We now come to the argument that these statutes and their application are repugnant to the state constitutional prohibition against imprisonment for debt, Minn. Const. art. 1, § 12. The defendant company's theory is that the effect of the statute is to create a debt on the part of the employer to his employee who takes time off in the forenoon of an election day to vote and that if the debt is not discharged by payment the employer is subjected to arrest, fine, or imprisonment. No doubt if the pay deduction here of $3.50 were not paid but withheld a civil remedy for debt would arise by operation of this section in favor of the injured employee. But does this debt play any part in imposing criminal liability provided for in the statutes in question? Can it seriously be contended that, if on failure of the company to pay payment were enforced through a civil suit or payment were later voluntarily made, the state of Minnesota would be barred from bringing this criminal action for breach of statutory duty constituting a misdemeanor?

The penal section involved provides that every person who as principal or as an official or agent shall directly or indirectly refuse, abridge, or in any manner interfere with any of the election privileges or immunities of any employee of himself or his principal shall be guilty of a misdemeanor. Section 206.21 says that the employee as a voter may absent himself on election day during the forenoon thereof without a penalty or deduction from salary or wages on account of such absence. The interference directly or indirectly with the voting privileges of the employee Kennedy began before election day when Davidson met with the industrial relations advisor at the parts depot to discuss the statutory provisions and was informed that employees would not be allowed time off to vote with pay. This interference with Kennedy's voting privileges was further evidenced by the letter of October 29, 1952, previously mentioned, which set out the company's policy in regard to compensation of employees

who voted during their work periods. The penalty applied through deduction of wages simply amounted to completion of the interference, abridgment, and refusal of the privilege which had begun prior to election day in 1952.

The court below followed the case of Arizona Power Co. v. State, 19 Ariz. 114, 166 P. 275, and held that since a corporation could not be imprisoned it did not come within the constitutional provision forbidding imprisonment for debt; but in its memorandum the court indicated that the imprisonment-for-debt provision might be applicable in a case involving an individual employer under the same or similar circumstances. We agree with the holding of the trial court that a corporation is not subject to imprisonment if found guilty of a misdemeanor in connection with the pay-while-you-vote statutes of this state; that it cannot benefit by the provision forbidding imprisonment for debt; and that the case could be decided on that ground alone, as was done below. However, we do not feel that the statutes involved here require that a decision be based upon such narrow ground.

The defendant company here was being prosecuted for a breach of statutory duty, namely, the interference, abridgment, or refusal referred to in the penal section, § 210.11. Defendant company contends that the wages it must pay for the period during which an employee absents himself to vote constitute a debt and that since violation of the statutes constitutes a misdemeanor subject to fine, followed by imprisonment on failure to pay the fine, therefore the enforcement of §§ 206.21 and 210.11, in conjunction with § 610.19, would result in an indirect imposition of imprisonment for debt. We cannot agree with that conclusion. No collection of a debt is involved here unless we adopt a most strained construction, since these statutes raise a statutory obligation to pay rather than a "debt" and prosecution for violation of such statutes only constitutes the legal sanction imposed by the state under its police powers for breach of a statutory duty. Sound analysis indicates that we are dealing with a breach of statutory *duty* arising from a statute in which there is no evidence of a legislative intent to circumvent the

constitutional prohibition against imprisonment for debt, and we so hold.

We see no good reason to interfere with the order and judgment of the court below, and the judgment is accordingly sustained.

Affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.