WAGLER, P. J.
 

 This is an appeal by 59 employees of respondent, International Harvester Company, from an adverse judgment rendered in their action to recover wages which were deducted from the paycheck of each because of a two-hour absence during regular working hours on November 4, 1952, a general election day.
 

 The action is based upon section 5699 California Elections Code, which on the date in question, read as follows:
 

 “Every voter shall, on the day of every general, direct primary or presidential primary election, at which he is entitled to vote, be entitled to absent himself from any service
 
 *Supp. 876
 
 or employment in which he is then engaged for two consecutive hours between the time of opening and the time of closing the polls. The voter shall not, because of so absenting himself, be liable to any penalty nor shall any deduction be made on account of such absence from his usual salary or wages. ’ ’
 

 The case was submitted to the trial court upon a stipulation of facts and the admissions contained in the pleadings. Only questions of law are therefore involved.
 

 The pertinent facts are as follows:
 

 On November 4, 1952, a general election day, each plaintiff was employed by the defendant at its Emeryville plant at an agreed hourly wage. The regularly scheduled working hours commenced at 7 :30 a. m. and ended at 4 p. m. On the date in question, each plaintiff absented himself from his employment for two hours, to wit: between 2 p. m. and 4 p. m. and each worked only six hours for which he has been paid. Defendant has refused to pay plaintiffs, or any of them, wages for the two hours aforementioned, although same has been duly demanded. On said election day the polls opened at 7 a. m. and were kept open until 7 p. m. If plaintiffs had not absented themselves from their employment, each plaintiff would still have had sufficient time between the conclusion of regular working hours at 4 p. m. and the closing of the polls within which to travel from his place of employment to his election poll and to vote. Each plaintiff did in fact vote in said general election.
 

 On November 6, 1950, the defendant as employer and International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, and its affiliated local unions, Numbers 6, 57, 98, 226, 402, 817, 916, 988, 1101 and 1106, as bargaining representative, entered into a contract with respect to rates of pay, wages, hours and other conditions of employment. (Some of said local unions are located in states which do not have time off for voting statutes.) Said contract was in full force and effect on November 4, 1952, and each of the plaintiffs was an employee covered by said contract. Article XX of said contract provides as follows: “Employees shall be allowed the necessary time off,
 
 without
 
 pay, to vote in any Federal, State or Municipal Election.”
 

 Three questions of law were argued before the trial court. The same questions are raised on this appeal. They are:
 

 (1) Is section 5699, California Elections Code, constitutional ?
 

 
 *Supp. 877
 
 (2) Is section 5699 ambiguous and therefore subject to judicial interpretation ?
 

 (3) What is the effect of article XX of the collective bargaining contract above set forth upon the right of plaintiffs to claim compensation as provided by the statute ?
 

 The learned trial judge in his memorandum opinion found section 5699, California Elections Code to be constitutional, but denied recovery to the plaintiffs on the ground that article XX of the collective bargaining contract constituted a valid waiver of the statutory right to pay which was binding on each of the plaintiffs.
 

 Constitutionality
 

 The constitutionality of section 5699 has never been judicially determined by the Supreme Court of this state. Similar statutes have been upheld against attack on constitutional grounds by the courts of last resort in Missouri
 
 (State
 
 v.
 
 Day-Brite Lighting, Inc.,
 
 362 Mo. 299 [240 S.W.2d
 
 886]);
 
 Minnesota
 
 (State
 
 v.
 
 International Harvester Co.,
 
 241 Minn. 367 [63 N.W.2d 547]) and Iowa
 
 (Lorentzen
 
 v.
 
 Deere Manufacturing Co.,
 
 245 Iowa 1317 [66 N.W.2d 499],
 

 The Supreme Court of the United States in
 
 Day-Brite Lighting
 
 v.
 
 Missouri,
 
 342 U. S. 421 [72 S.Ct. 405, 96 L.Ed. 469], found the Missouri statute, which is similar to our own, free of infirmity under the due process and equal protection clauses of the 14th Amendment and the contract clause of article I, section 10.
 

 A “pay while voting” statute was upheld by the Appellate Division of the Supreme Court of New York in
 
 People
 
 v.
 
 Ford Motor Co.,
 
 271 App.Div. 141 [63 N.Y.S.2d 697], and the statute in question has been held constitutional by appellate departments of the superior court in this state in
 
 Ballarini
 
 v.
 
 Schlage Lock Co.,
 
 100 Cal.App.2d Supp. 859 [226 P.2d 771], and
 
 Tidewater Assoc. Oil Co.
 
 v.
 
 Robinson,
 
 22 Labor Cases 67, 217. (Summarily affirmed by the U. S. Supreme Court, 344 U. S. 804 [73 S.Ct. 27, 97 L.Ed. 626].)
 

 The foregoing decisions represent the majority
 
 *
 
 view. They are consistent with the evolution of an expanding police power. They all conclude, as do we, that “pay while voting” statutes represent a legitimate attempt by the Legislature to
 
 *Supp. 878
 
 safeguard the right of suffrage and it is not the province of the courts to question the wisdom of such legislation.
 

 Ambiguity
 

 Respondent contends that the statute should he construed by the courts as requiring the employer to give the designated time off only if the employee does not have two consecutive hours of free time during which he has sufficient opportunity to vote. With this contention we cannot agree. It is a cardinal rule that a statute free of ambiguity and uncertainty needs no construction and should be enforced as written. The language of section 5699 is clear and unambiguous. There is, therefore, no room for statutory construction. We must conclude that the Legislature meant what it said and that each employee shall be entitled
 
 “to
 
 absent himself from . . . employment . . . for two consecutive hours” irrespective of other free time.
 

 Waiver
 

 By the plain terms of the collective bargaining contract, the appellants waived their right to compensation while taking time off to vote. This waiver provision, however, they contend, is of no effect, because it is contrary both to public policy and to express provision of law.
 

 The doctrine of waiver is generally applicable to all rights and privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided, however, such rights and privileges rest in the individual and are intended for his sole benefit.
 
 Miller & Lux, Inc.
 
 v.
 
 San Joaquin Light & Power Corp.,
 
 120 Cal.App. 589 [8 P.2d 560].
 

 The policy of the law in this state in this regard is expressed in Civil Code, section 3513, in the following language: “Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.”
 

 A law has been established “for a public reason” only if it has been enacted for the protection of the public generally, i. e., if its tendency is to promote the welfare of the general public rather than a small percentage of citizens. 12 Am.Jur. 661;
 
 In re Kazas,
 
 22 Cal.App.2d 161 [70 P.2d 962];
 
 California Bank
 
 v.
 
 Stimson,
 
 89 Cal.App.2d 552 [201 P.2d 39];
 
 DeHaviland
 
 v.
 
 Warner Bros. Pictures, Inc.,
 
 67 Cal.App.2d 225 [153 P.2d 983].
 

 
 *Supp. 879
 
 In
 
 California Bank
 
 v.
 
 Stimson, supra,
 
 it was held that Code of Civil Procedure, section 580a prescribing the procedure for securing a deficiency judgment was adopted to promote the public welfare by shielding the debtor class from oppression. As such, said section was construed as a declaration of a public policy of the state, and not subject to waiver.
 

 In
 
 DeHaviland
 
 v.
 
 Warner Bros. Pictures, Inc., supra,
 
 Miss DeHaviland waived the provisions of section 2855 of the Labor Code, which limits a contract of personal service to “seven years from the commencement of service under it.” This she did by agreeing that her employer should have the right to suspend her for a period or periods when she should fail, refuse or neglect to perform her service to the full limit of her ability, etc., and that the employer at its option should have the further right to extend the term of the contract for a time equal to the periods of suspension. It was held that the waiver was invalid since “the rights of employees as now declared by 2855 of the Labor Code fall squarely within the prohibition of Section 3513 of the Civil Code, that rights created in the public interest may not be contravened by private agreement.”
 

 It is difficult to envision legislation enacted for greater public reason than that designed to safeguard the right of suffrage by the working class. Indeed, the major premise upon which the constitutionality of “pay while voting” statutes has been sustained in this and in other states is that the police power pursuant to which such legislation is enacted extends to “all of the great public needs,” including an increase in election participation and the free exercise of the right to vote.
 

 The learned trial judge in his memorandum opinion expressed the view that due to a change in conditions since the adoption of the statute in 1891, the public policy therein expressed should no longer apply. The fallacy underlying this reasoning is that it permits the courts to overrule a public policy already expressed by the Legislature in a field which is peculiarly within the prerogative of the Legislature. The Legislature has met many times since the enactment of this statute. It too, is presumably cognizant of existing conditions. Yet it had not, prior to the commencement of the instant action seen fit to change the statute.
 

 Not only is the waiver provision of the contract invalid because against public policy, but also because it is contrary to an express provision of law. (Civ. Code, § 1667.) Be
 
 *Supp. 880
 
 spondent tacitly concedes that the statute prohibits the employer from making any deductions from the employees’ usual salary on account of time off while voting. It also recognizes the rule that normally the imposition by a statute of a penalty implies a prohibition of the act to which the penalty is attached, and that a contract founded on such an act is void. Respondent contends, however, that section 5699 is not penal in character, because the section itself contains no penal provision. This argument entirely overlooks the provisions of sections 11500 and 11501 of the California Elections Code, which read as follows:
 

 11500. “All the provisions of this division apply to both final elections and primary elections.”
 

 11501. “Every person who wilfully violates any of the provisions of the laws of this state relating to elections is, unless a different punishment is prescribed by this Code, punishable by a fine not exceeding one thousand dollars, or by imprisonment in the State Prison not exceeding five years, or by both.”
 

 In
 
 State
 
 v.
 
 International Harvester Co.,
 
 241 Minn. 367 [63 N.W.2d 547], the Supreme Court of Minnesota had before it on appeal statutes quite similar to the ones involved in the instant case. Also involved was a collective bargaining contract with provisions identical to article XX of the collective bargaining contract under which these appellants were employed. The Supreme Court held that the waiver provision in the contract was no defense to a prosecution instituted as a result of a deduction from wages representing time off on election day. We would be compelled to hold likewise in case of a similar prosecution under our own statute.
 

 The judgment for the defendant is reversed and the court is directed to enter judgment for the plaintiffs as prayed.
 

 Hoyt, J., and Ledwich, J., concurred.
 

 *
 

 Decisions holding “pay while voting” statutes unconstitutional have been rendered by the Court of Appeal in Kentucky, in
 
 Illinois Cent. R. Co.
 
 v.
 
 Commonwealth,
 
 304 Ky. 632 [204 S.W.2d 973]; and by the Supreme Court of Illinois in
 
 People
 
 v.
 
 Chicago, M. & St. Paul R. Co.,
 
 306 Ill. 486 [138 N.E. 155, 28 A.L.R. 610].